UNITED STATES of America

v.

ONE BALLY GOLDEN GATE, Serial No. C-36756580, One Bally Golden Gate, Serial No. C-13544542, One Bally Golden Gate, Serial No. C-36756947 and Contents, $237.45.

Civ. A. No. 670.

United States District Court
W. D. Virginia,
Harrisonburg Division.

Jan. 15, 1964.

a libel of information against three coin operated devices and their coin contents, alleging that they were maintained and used for carrying on the trade or business of operating coin operated gaming devices without first paying the special occupational taxes imposed on such trade or business by the Internal Revenue Code and that by reason thereof the gaming devices and contents became forfeited to the United States.

Roanoke Vending Exchange, Inc., as vendor of the coin operated devices under a conditional sales contract, intervened and filed its claim for the devices under the conditional sales contracts. Later Roanoke Vending Exchange, Inc. conceded that the devices were properly seized and forfeited and the government thereupon presented a bill of costs against the intervenor. This bill of costs included expenses incurred for seizing and storing the coin operated devices prior to the intervention of the intervenor and the intervenor contended that it should not be charged with any of the costs that would have been incurred had it not intervened but only with court costs or other costs consequent upon its intervention. The government would not agree with that contention and Roanoke Vending Exchange, Inc. brought the matter before this Court for review.

Under the provisions of § 7325(3) of the Internal Revenue Code, when the government has seized certain goods subject to forfeiture a claimant may file a claim stating his interest in the articles seized and execute a bond "conditioned that, in case of condemnation of the articles so seized, the obligors shall pay all the costs and expenses of the proceedings to obtain such condemnation; ". In the case at bar, such a bond was given by the claimant but the claimant later decided not to contest the forfeiture any further and the question at issue now is: what are "the costs and expenses of the proceedings to obtain such condemnation"? There are two possible solutions. The government contends that "the proceedings to obtain such condemnation" include all of the steps taken by the gov-

---

Lawrence C. Musgrove, Asst. U. S. Atty., Roanoke, Va., for plaintiff.

William J. Lemon, Martin, Hopkins & Lemon, Roanoke, Va., for defendant.

MICHIE, District Judge.

The United States Attorney on behalf of the United States filed in this Court

ernment, including the cost of the original seizure, the cost of publication of the notice of seizure, and the cost of storage from the date of seizure through the periods of publication and, in this case, subsequent litigation up to the date of destruction of the property by the marshal. It has been so held in United States v. One 1938 Model Ford, etc., D.C., 77 F.Supp. 294, a 1948 case which has apparently never been cited in any subsequent case.

The other possible construction is that the successful claimant is required to pay only the costs and expenses of the legal proceedings. "Proceedings" in statutes usually refer to court proceedings rather than to actions taken before court proceedings are instituted. And in a somewhat similar situation, in United States v. One 1949 G.M.C. Truck, D.C., 104 F.Supp. 34, Judge Hutcheson held that storage charges should not be charged against the claimant.

■ There is a good reason for construing the language of the statute narrowly. The general principle of Anglo-Saxon jurisprudence has always been that the loser of a lawsuit had to pay the taxable court costs but that other costs incurred by the winner (legal fees, expert witness fees, etc.) are not such costs as can be charged to the loser. So we should approach the idea that Congress has provided for such an unusual penalty on an unsuccessful claimant with considerable hesitation.

■ Of course, the right of Congress so to provide cannot be questioned. The United States can be sued only with its own consent. And it may condition its consent in any way it chooses. Constitutionally, it would seem that the United States might not only completely withdraw the right of a citizen to sue the government, but may condition it as it has in this case, or might even go further and condition it upon the plaintiff paying to the United States even before suit was started any extra sum that Congress might select and providing that that amount should in any event be retained by the United States. Such an unreasonable. condition would of course put the prospective plaintiff in no worse position than he would be in if the United States simply refused to permit anyone to sue it which it clearly can do.

■ However, for many years the United States has consented to be sued and, as indicated above, one should not assume, unless the matter is very clear indeed, that Congress, as a condition of this particular suit, intended to place a substantial penalty upon an unsuccessful claimant. In other words, the language used by Congress should be construed as narrowly as possible as being, even wher so construed, contrary to the whole trenc of Anglo-Saxon law.

■ I am therefore of the view that the phrase "proceedings to obtain such condemnation" should be construed to refer to the legal proceedings and not to other proceedings incident to such condemnation. Nevertheless, by a rather far-fetched construction, one might argue that the unsuccessful plaintiff is required to pay, over and above court costs, costs and expenses incurred *as a result of his intervention in the proceedings*. And this could not be regarded as an unreasonable provision for Congress to enact. In the case at bar the intervention of the plaintiff resulted in the storage of the articles for an additional period of time. And the plaintiff in this case has agreed to accept the construction that he is liable for all costs, whether legal or otherwise, which resulted from his unsuccessful intervention. Consequently, without necessarily committing myself to this construction, I nevertheless hold that under the circumstances of this case and in view of the concession of the plaintiff, the plaintiff should pay the court costs involved as a result of his intervention and also any other costs which would not have been incurred but for the plaintiff's intervention in the proceedings. But he does not have to pay any costs which would have been incurred if he had not intervened.

An order will be entered accordingly.