UNITED VIRGINIA BANK/CITIZENS
AND MARINE et al., Plaintiff,
et al., Intervening Plaintiffs,

v.

OIL SCREW SEA QUEEN, her engines,
boilers, etc., in rem, and William R.
Rowe and Helen F. Rowe, in personam,
Defendants.

Civ. A. No. 114–70.

United States District Court,
E. D. Virginia,
Newport News Division.

May 25, 1972.

Warren H. McNamara, Jr., Hampton, Va., for United Virginia Bank/Citizens and Marine, plaintiff.

Lloyd Rials, Hampton, Va., for The Harris Co., Inc., plaintiff.

Percy Carmel, Hampton, Va., for J. S. Darling & Son, Inc., I. Cooper's, Inc., Benthall Bros., Inc., and L. D. Amory and Co., Inc., plaintiffs.

Hugh S. Meredith, Norfolk, Va., for Virginia Tractor Co., plaintiff.

Roy L. Sykes, Jett, Sykes & Berkley, Norfolk, Va., for E. Smola Co., Inc., plaintiff.

Nelson T. Durden, Hampton, Va., for defendants.

## MEMORANDUM OPINION

MacKENZIE, District Judge.

The plaintiff Bank instituted this action on September 2, 1970 against the fishing vessel SEA QUEEN, *in rem,* and her owners, William R. Rowe and Helen F. Rowe, *in personam.* Originally, the point of the proceedings was for the Bank to recover the balance due of $15,036.00 on a preferred ship's mortgage, recorded March 24, 1969. The vessel was sold under that mortgage on December 15, 1970, and brought only $7,500.00.

In the meantime, however, intervening creditors have appeared in this proceeding, en masse. Some have properly filed their claims by order, and some not, but in any event, the claims far exceed the sum available for ultimate distribution to *in rem* creditors.

Filed prior to the sale of the vessel were the claims of:

1. September 22, 1970 — Virginia Tractor Company—open account—$11,466.75. To this claim the Rowes have filed a cross-claim for $90,000.00.
2. September 30, 1970 — E. Smola Co., Inc.—open account—$7,628.32; note $8,814.01—total $16,442.33.
3. October 12, 1970 — Internal Revenue Service—net $222.03.
4. October 30, 1970 — J. S. Darling and Son—open account—$2,922.99. Lodged but not properly filed by order.
5. October 30, 1970 — I. Cooper's, Inc.—open account — $2,920.41. Lodged but not properly filed by order.
6. October 30, 1970 — L. D. Amory and Company, Inc.—open account—$868.50. Lodged but not properly filed by order.

Filed after the sale of the vessel were the claims of:

7. January 12, 1971 — United Virginia/Citizens Marine Bank on a note, $3,120.00 (this was lodged January 12, 1971 and filed by this court—and was later withdrawn).
8. January 12, 1971 — United Virginia/Citizens Marine Bank for costs in this action $1,643.79 (this was lodged January 12, 1971, and ordered filed by the court).
9. January 13, 1971 — The Harris Company—open account—$443.93 (lodged January 13, 1971 but never filed by order of this court).
10. January 14, 1971 — Benthall Bros., Inc.—open account—$213.33 (lodged January 14, 1971 but never filed by order of the court).

Title 46, U.S.C. § 953, establishes the priorities for distribution of the fund in the registry of the court. That section reads as follows:

"§ 953. Preferred maritime lien; priorities; other liens

(a) When used hereinafter in this chapter, the term 'preferred maritime lien' means (1) a lien arising prior in time to the recording and indorsement of a preferred mortgage in accordance with the provisions of this chapter;

or (2) a lien for damages arising out of tort, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew of the vessel, for general average, and for salvage, including contract salvage.

(b) Upon the sale of any mortgaged vessel by order of a district court of the United States in any suit in rem in admiralty for the enforcement of a preferred mortgage lien thereon, all preexisting claims in the vessel, including any possessory common-law lien of which a lienor is deprived under the provisions of section 952 of this title, shall be held terminated and shall thereafter attach, in like amount and in accordance with their respective priorities, to the proceeds of the sale; except that the preferred mortgage lien shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxed, by the court. June 5, 1920, c. 250, § 30, Subsec. M. 41 Stat. 1004."

With this statute must be reflected Rule 20 of the Admiralty Rules of the United States District Court for the Eastern District of Virginia, as follows:

"20. Order of Distribution of Proceeds of Sale

Maritime liens filed before sale shall be paid first, and maritime liens filed after sale shall be paid last. But liens in each of these two classes shall preserve their respective rank as among themselves, except in the case of maritime liens of the first class, the order of priority between such liens shall be that those which have accrued within one year prior to the filing of the libel shall be paid first, and claims which have accrued theretofore shall be paid in the order of the years in which they accrued."

■ From the foregoing Federal Statute and local Admiralty Rule the order of priority to be applied to the fund

for distribution is declared to be (1) expenses and fees allowed and taxed as costs by this court, (2) preferred maritime liens arising prior to the preferred mortgage, (3) the preferred mortgage, (4) maritime liens arising after the mortgages and filed before the sale of the vessel, (5) maritime liens arising after the mortgage and after the sale of the vessel, (6) liens guilty of laches at the date of the mortgage, and (7) non-maritime claims. 46 U.S.C. § 953, U.S. District Court, Eastern District of Virginia, Local Admiralty Rule 20, National Shawmut Bank v. The Winthrop, etc. (D.C.Mass.1955) 134 F.Supp. 370.

It becomes immediately apparent that after deducting expenses, etc., from the $7,500.00 sales proceeds, there will be roughly $6,000.00 available for distribution. That being the case, either E. Smola Co., Inc.'s preferred maritime lien, if proved, or United Virginia Bank/Citizens and Marine Bank's preferred mortgage, would entirely preempt the fund from the mortgage foreclosure.

The issue, therefore, at the hearing on April 21, 1971, resolved itself into a determination of the relative priorities of these two claims. The other claimants made no move to appear or present evidence.

■ The Bank agreed in its pre-trial memorandum that Smola's preferred lien existed and was known to the Bank at the time it recorded its mortgage. It indicated it would contend that Smola had been guilty of laches. However, at trial, no evidence to support a laches defense was adduced. Instead, the loan officer for the Bank, who made the loan to Rowe on the SEA QUEEN and secured it with the ship's mortgage, agrees that he knew of the lien of E. Smola Co., Inc., had discussed it with the Bank's attorneys, and when the Bank resolved that it would not make a loan on the vessel sufficient to pay off Smola, he

"took the calculated risk" of securing the Bank's interest with a lesser mortgage leaving Smola's prior claim extant and superior thereto.

So far as the court was concerned, this ended the Bank's claim, laches or otherwise, and established E. Smola Co., Inc.'s claim for equipment and supplies to the SEA QUEEN as the preferred maritime lien holding the top priority after payment of costs, to the funds in the registry of the court.

Credible evidence at trial, believed by the court, established the Smola open account claim entitled to lien preference to be $7,098.87.

■ Furthermore, the E. Smola Co., Inc. note claim of $7,643.00, being for equipment and supplies furnished the SEA QUEEN prior to the March 24, 1969 mortgage date, is likewise declared to be a preferred maritime lien, predating the mortgage and in priority thereto. The acceptance of a note for these supplies and equipment from the Rowes, which Smola discounted at the Bank, subject to recourse, in the light of Smola's testimony to the contrary, was not proved to have been accepted intending such acceptance of a note to be "payment" to thus extinguish the lien.

---

■ At trial, the Bank also insists that the premium for the port insurance coverage on the vessel from the time of libel in early September 1970 until sale on December 14, 1970, is a proper item of cost. With the insurance thus afforded, the daily custodial fee was reduced from $60.00 per day (with the United States Marshal) to $10.00 per day (with Charles Amory). Thereafter followed the novel argument (1) by Smola, that the Bank should pay the insurance premiums, but any recovery for losses (for theft of equipment on board the vessel) should be paid into the court for Smola's benefit, and (2) by the Bank, that the insurance premium should be charged to the fund, but losses payable thereunder should be paid to the Bank.

The court accepts neither of these propositions. The insurance coverage contracted for has had the effect of materially increasing the fund available to creditors by greatly reducing the custodial fee—actually by approximately $5,000.00. It is held that the premium of $552.77 is a proper charge as a cost in this proceeding and that any losses recoverable under the policy shall likewise be paid into the fund in the registry of the court.

---

This memorandum does not attempt to settle all matters of costs and expenses allowable by the court in the prosecution of this suit. It is expected that such expenses can be stipulated and agreed to. If objections are raised, a hearing will be had thereon. The only such expense item so far raised and here decided is the matter of the insurance premium. Objections raised to the payment of $1,120.00 in custodial fees to Charles Amory have not yet been heard or determined.

*In personam* judgments against the Rowes have already been secured by Benthall Bros., Inc., The Harris Company, J. S. Darling and Son, and L. D. Amory and Company, Inc., and hence their claims here against the Rowes are dismissed. No determination of their *in rem* priority is necessary since no funds are available for payment to them.

The Virginia Tractor Company claim against the Rowes' cross-claim is not here litigated, except that the Virginia Tractor account is not entitled to any preferred maritime lien status in reference to the preferred ship's mortgage.