SWIFTSHIPS FREEPORT,
INC., Plaintiff,

v.

M.V. "CAYMAN ENDEAVOR", in rem,
et al., Defendants.

Civ. A. No. H–86–2324.

United States District Court,
S.D. Texas,
Houston Division.

July 31, 1988.

L. Glen Kratochvil, Houston, Tex., for plaintiff.

Ralph Smith, New Orleans, La., Frank Billings, Houston, Tex., for intervenor Bank.

## MEMORANDUM ON COSTS

HUGHES, District Judge.

This is an admiralty dispute over the allocation of court costs between the holder of a maritime repair lien and the holder of a preferred ship mortgage. The intervening mortgagee will be taxed only the costs attributable to its activity.

*Background.*

Swiftships Freeport, Inc., repaired the M.V. *Cayman Endeavor* in the spring of 1986. The shipyard claimed a value for the repairs of $132,121.10. When the owner of the vessel did not pay, Swiftships, claiming a maritime lien, had the ship seized and sold. United Bank of Virginia intervened claiming its preferred ship mortgage of $200,000. The vessel was sold for $130,000 to Swiftships. After deducting the costs, there was a fund of only about $110,000 for all claimants.

After a trial of the reasonableness of the charges and the necessity of the repairs, the Swiftships claim was reduced slightly, and it was awarded $129,190 principal, prejudgment interest, attorney's fees, postjudgment interest, and all costs of court. The court originally taxed all of the costs against the intervenor-mortgagee, United Bank. It has requested the court to review the costs and to tax only those costs incurred as a result of the intervention of United Bank.

The costs are:

| | |
|---|---:|
| Filing | $ 60.00 |
| Service | 100.90 |
| Witnesses | 290.00 |
| Custodian | 11,500.00 |

| | |
|---|---|
| Marshal's | $ 8,356.98 |
| Total | $20,307.88 |

Because the fund resulting from the sale was inadequate to satisfy even the first claim by Swiftships, it seeks to have the substantial expenses of the seizure and sale assessed against the co-claimant mortgagee *in personam*. The only reason the bank was a loser in the litigation was the low value of the ship at auction.

*Rule.*

■ For the vast majority of cases, courts adopt a common sense rule. Costs of court can be taxed against an intervenor, only to the extent those costs were occasioned by his presence in the lawsuit. *See U.S. v. One Bally Golden Gate*, 225 F.Supp. 552 (W.D.Va.1964); *Brenden Chartering Corp. v. Fos Shipping Co.*, 378 F.Supp. 368 (E.D.N.Y.1974) (multiple claimants only required to pay for the time each had the vessel under seizure). *See generally* Annot., *Storage or Similar Caretaking Charges as Taxable Costs in Proceeding to Forfeit Personal Property*, 60 A.L. R.2d 813 (1958).

■ There are exceptions that prove this rule. In some instances intervenors can be more embroiled in the center of the lawsuit than either of the original parties, and the intervenors rightly can be taxed costs of the entire dispute. In other cases intervenors who are only tangentially related to the controversy can confound a simple exercise causing the other litigants time and expense and wasting limited resources. These intermeddlers can be taxed the costs of the entire dispute. *See Ferguson v. Bole*, 168 Pa.Super. 305, 77 A.2d 711 (1951) (intervenors taxed costs accruing before and after intervention).

■ If this were a dispute between the shipyard and a chandler, both claiming current accounts, then the costs would be apportioned between them to the extent that each benefitted from the seizure. The bank has asserted a claim which is not predicated on the seizure and which was perfected and enforceable otherwise; however, once the shipyard had the vessel seized, the mortgagee bank was compelled to intervene. The costs attributable only to the bank's claims will be taxed against it.

*Swiftships' Interest.*

Apart from the manifest equity of apportioning the costs based on whose acts generated the costs or on whom they benefitted, the shipyard is not entitled to enlarge its claim, which is only to the value of the vessel less the costs of enforcement, by seeking recovery of those costs *in personam* against a fellow claimant; all of the maritime lien claimants are entitled to compete for the net value of the vessel if it is arrested. If the costs of enforcement reduce the value of the vessel below the first claim amount, the right to the lien is extant but is partially unavailing. If one claimant causes an arrest, requiring other claimants to intervene or to lose the potential for recovery, he cannot oblige the intervenors to enlarge the available fund by contributing their personal liability for all costs. Since the priority and correctness of maritime liens is a matter of some complexity, a rule that would penalize a nonrecovering co-claimant would serve only to enrich the eventual winner and reduce the likelihood of bona fide claims. Requiring a prospective intervenor to subject itself to the possible taxation of the total costs eviscerates its right to intervene.

The nature of the interest afforded a shipyard for a maritime repair lien is a net *in rem* claim. The security it has is only the post-seizure net sales proceeds. *New York Dock Co. v. The "Poznan"*, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955 (1927); *see United Virginia Bank/Citizens & Marine v. Oil Screw "Sea Queen"*, 343 F.Supp. 1020 (E.D.Va.1972) It is axiomatic that no personal liability exists against third-parties for the shipyard's expenses of enforcement *in rem;* that would expand the *in rem* claim beyond the *res*.

*Timing.*

■ Swiftships objects to United Bank's request that the court review the costs as untimely. Once again, the rule of common sense controls. The objection will be overruled; legal holidays are not included in the five-day period in Rule 54(d). Federal Rule

6 incorporates the state holidays of the state where the federal court sits, and this case's timing turns on April 21st, San Jacinto Day, being a holiday for Texans. Fed.R.Civ.P. 6; Tex.Rev.Civ.Stat.Ann. art. 4591 (Supp.1988).

*Conclusion.*

While the intervention by United Bank required this case to be tried, all of the other fees had to be incurred, intervention or not. United Bank's presence in the lawsuit caused no increase in delay or expense, so it will be ordered to pay only the witness fees of $290.00.