993 P.2d 596

RURAL KOOTENAI ORGANIZATION, INC., an Idaho nonprofit corporation, and Linda Erickson, Plaintiffs–Cross–Appellants,

v.

BOARD OF COMMISSIONERS, Kootenai County, State of Idaho, Defendant–Cross–Respondent,

and

McCormack Properties of Idaho, an Idaho corporation, Intervenor–Cross–Respondent.

No. 22271.

Supreme Court of Idaho, Lewiston, April 1999 Term.

Dec. 9, 1999.

Rehearing Denied Feb. 23, 2000.

834

Sheroke & McGregor, Coeur d'Alene, for cross-appellants. Charles Sheroke argued.

Scott L. Wayman, Coeur d'Alene, for cross-respondents, Board of Commissioners.

Wetzel & Wetzel, Coeur d'Alene, for cross-respondents, McCormack Properties. Dana Wetzel argued.

SCHROEDER, Justice.

This is an appeal of a land use decision made by the Kootenai County Board of Commissioners (Board or County) in favor of McCormack Properties of Idaho, Inc. (McCormack). The Board granted McCormack's application for preliminary approval of a planned unit development (PUD) and approval of a preliminary plat of a ninety-two lot subdivision located within the PUD. Rural Kootenai Organization (RKO), an organization which participated in the public hearings before the Board and which opposed McCormack's application, appealed the Board's decision to the district court which vacated and remanded a portion of the Board's findings and affirmed the remainder of the Board's decision. RKO challenges aspects of the Board's decision which were affirmed by the district court. This Court vacates and remands that portion of the district court's decision concerning whether the Board properly determined ownership of all the lands contained within the PUD. The remainder of the district court decision is affirmed.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

In August 1993, McCormack submitted an application for preliminary approval of a PUD and approval of a preliminary plat of a ninety-two lot subdivision (the subdivision) located within the PUD. The entire PUD consisted of 220 acres and was divided into two parts. One part consisted of 102 acres located within a bay of Lake Coeur d'Alene known as Cougar Bay. This area was designated as public open space within the PUD and was to be used as a wildlife sanctuary. McCormack agreed to sell and donate the 102 acres for a wildlife sanctuary to the Nature Conservancy for use as a public open space to protect water fowl habitat and wild-

life if and when the PUD was approved by the County. The other part of the PUD consisted of approximately 118 acres which included the subdivision.

McCormack's application consisted of a fifty-six page narrative explaining the components of the PUD and setting forth engineering designs from J–U–B Engineers for all infrastructure including storm water and wastewater. The application also included letters from the fourteen affected agencies identified by the Kootenai County Planning and Zoning Staff. All of the submittals in the application were in response to the Kootenai County Subdivision Ordinance of 1978.

The Planning Administrator deemed the application complete, and the Kootenai County Planning and Zoning Commission (P & Z Commission) held public hearings on October 20, 1993, and November 3, 1993. The P & Z Commission placed conditions on the application and approved the application. The P & Z Commission forwarded the application to the Board with a unanimous recommendation to approve the preliminary application for the PUD and the preliminary subdivision plat.

The Board held public hearings on the application on December 7 and December 21, 1993. The Board granted both preliminary approval of the PUD and approval of the preliminary subdivision plat, subject to a number of conditions. On January 5, 1994, the Board adopted and approved an Order of Decision which is the focus of this appeal.

The procedural history of this matter is long and complex. RKO filed a petition for judicial review of the Board's January 5, 1994, decision with the district court (Judge Craig C. Kosonen presiding). The district court vacated and remanded to the Board certain findings made by the Board. The Board had found that the PUD and subdivision conformed with all of the goals and policies of the Kootenai County Comprehensive Plan (Comprehensive Plan). The Board had also found that the preliminary designs for wastewater treatment and storm water treatment met the requirements of review for approval of a preliminary plat. The district court, however, concluded that the language of Goals # 8 and # 9 of the

Comprehensive Plan were contradictory, and directed the Board to confirm on remand that the Board's interpretation of this language and the application of its interpretation of this language to the facts in the case resulted in findings that the PUD and subdivision conformed with the Comprehensive Plan. The district court also concluded that there was insufficient evidence in the record to support the Board's findings that the preliminary designs for wastewater treatment and storm water treatment were adequate for preliminary approval.

McCormack appealed the district court's June 2, 1995, order. The County and RKO cross appealed. Before oral argument in the present appeal, the Board held a hearing to address the issues on remand from Judge Kosonen and entered an order reaffirming its approval of the preliminary plat. Less than a month later, the P & Z Commission held a public hearing to consider McCormack's application for final plat approval for Phase I of the subdivision. On January 5, 1996, the Board entered an order granting final plat approval of Phase I of the subdivision.

RKO appealed the Board's final plat approval to the district court (Judge James R. Michaud presiding). McCormack moved to dismiss its appeal that was pending before this Court on the basis that the Board's final plat approval and RKO's appeal of the final plat approval rendered this Court's review of the preliminary plat approval moot. This Court dismissed McCormack's appeal and conditionally dismissed RKO and the County's respective cross appeals. RKO responded with a request that its cross appeal remain. Ultimately, the parties stipulated to dismissal of the County's cross appeal. The Court ordered the appeal to proceed solely on the issues raised in RKO's cross appeal.

Thereafter, in August 1997, McCormack submitted a request to the Board for an extension and stay of the subdivision development schedule set forth in the Board's preliminary plat approval order of January 5, 1994. The Board granted McCormack's request for extension and stay on March 11, 1998. RKO petitioned the district court for judicial review of the Board's stay order

(Judge James F. Judd presiding), Case No. CV 98–01492. Six days after RKO filed its petition for judicial review of the stay order, Judge Michaud rendered his opinion affirming the Board's final plat approval of Phase I of the subdivision. RKO did not file an appeal from this decision.

In addition to filing a petition for judicial review of the stay order which was still pending before the district court, RKO also filed a motion before this Court to augment the appellate record with the Board's March 11, 1998, stay order. This Court granted the motion and ordered the parties to submit supplemental briefing with regard to the issues surrounding the stay order. Less than a month later, however, a hearing was held in the district court (Case No. CV 98–01492), at which time the district court denied McCormack's motion to dismiss RKO's petition for review of the stay order. The district court concluded that it had jurisdiction to hear the issues surrounding the stay order and refused RKO's request to stay the district court proceedings pending review of the issues by this Court. The district court affirmed the Board's stay order on April 27, 1999. No appeal has been filed from this decision.

## II.

### ISSUES ON APPEAL

■ A threshold issue on appeal is whether the Board's January 5, 1994, order granting preliminary plat approval is an appealable order. This issue was raised in McCormack's appeal and addressed by the County in its cross appeal, but RKO argues the issue is no longer before this Court because the respective appeals filed by McCormack and the County were dismissed. Even so, the question of whether the order granting preliminary plat approval is appealable raises the question of whether this Court has subject matter jurisdiction. The question of subject matter jurisdiction can be raised by the Court *sua sponte*. *State, Dep't of Law Enforcement v. One 1955 Willys Jeep*, 100 Idaho 150, 152 n. 1, 595 P.2d 299, 301 n. 1 (1979).

Assuming the Board's order granting preliminary plat approval is an appealable order, the following issues raised by RKO in its initial cross appeal remain:

(1) Whether the Kootenai County Subdivision Ordinance requires a showing of feasibility of a proposed water system prior to approval of a preliminary subdivision plat and, if so, whether the record supports a finding of feasibility with respect to McCormack's proposed water system.

(2) Whether the Board violated RKO's fundamental due process rights by failing to provide notice of the April 6, 1994, and April 20, 1994, meetings.

(3) Whether the Board's decision not to address ownership of all the lands contained within the PUD violated applicable provisions of the Kootenai County Zoning Ordinance.

(4) Whether the district court erred in upholding the adequacy of the transcripts.

(5) Whether the Board's findings of fact are adequate to support a decision that the ordinance requirements for preliminary approval of a subdivision and PUD were met.

(6) Whether RKO is entitled to an award of attorney fees under the Private Attorney General Doctrine and section 12–117 of the Idaho Code (I.C.).

RKO also raised issues in its supplemental brief concerning the validity of the Board's March 11, 1998, stay order. The same issues were pending before the district court at the time of oral argument in this matter and have subsequently been determined. The Court will not address these issues in view of this Court's decision in this case which renders the stay order moot.

## III.

### STANDARD OF REVIEW

The standard of review was recently set forth in *Payette River Property Owners Ass'n v. Board of Commissioners of Valley County*, 132 Idaho 551, 976 P.2d 477 (1999):

The Idaho Administrative Procedure[ ] Act (IDAPA) governs the review of local zoning decisions.... In a subsequent appeal from the district court's decision

where the district court was acting in its appellate capacity under the IDAPA, the Supreme Court reviews the agency record independently of the district court's decision. The Court can not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Court defers to the agency's findings of fact unless they are clearly erroneous and the agency's factual determinations are binding on the reviewing court, even when there is conflicting evidence before the agency, so long as the determinations are supported by evidence in the record. Additionally, there is a strong presumption of favoring the validity of the actions of zoning boards, which includes the application and interpretation of their own zoning ordinances.

A Board's zoning decision may only be overturned where its findings: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence; or (e) are arbitrary, capricious, or an abuse of discretion. The party attacking a zoning board's action under I.C. § 67–5279(3) must first illustrate that the zoning board erred in a manner specified in I.C. § 67–5279(3) and must then show that a substantial right of the party has been prejudiced.

*Id.* at 553, 976 P.2d at 480 (citations omitted).

## IV.

## THE BOARD'S ORDER GRANTING PRELIMINARY PLAT APPROVAL IS AN APPEALABLE ORDER.

■ A person aggrieved by a final agency action who has exhausted all administrative remedies available within the agency is entitled to judicial review. I.C. §§ 67–5270, –5271. The question is whether the Board's order granting preliminary plat approval is a final agency action and, therefore, subject to judicial review.

McCormack and the County rely on *South Fork Coalition v. Board of Commissioners of Bonneville County*, 112 Idaho 89, 730 P.2d 1009 (1986), for the proposition that an order granting preliminary plat approval is not a final decision and, therefore, not appealable. In *South Fork Coalition*, the Bonneville County Commissioners had granted preliminary approval of a PUD on the appellant's (J.R. Hays & Sons, Inc.) property. South Fork Coalition appealed the decision to the district court, which overturned the Commissioners' preliminary approval. Hays then appealed to this Court which determined that the order granting preliminary plat approval was not a final decision subject to review. According to the specific language in section 1–2520 of the Bonneville County Zoning Ordinance, the Commission's preliminary approval served only as an "approval in principle" which could "not be construed to endorse a precise location of uses, configuration of parcels or engineering feasibility." 112 Idaho at 90, 730 P.2d at 1010 (quoting Bonneville County Zoning Ordinance § 1–2520). Under the Bonneville County Zoning Ordinance, the Board retained jurisdiction to either approve or deny the final plan after reviewing it and after placing "such other restrictions [on it] as it deems advisable in the general welfare of the community and neighborhood." *Id.* (quoting Bonneville County Zoning Ordinance § 1–2520). This Court determined that the appeal was premature and dismissed the appeal. *Id.*

In the present case the district court distinguished *South Fork Coalition* on the basis that the Kootenai County Subdivision Ordinance requires the developer, prior to obtaining final plat approval from the Board, to either (1) verify that the necessary infrastructure (*i.e.*, road, water, sewer, and fire systems) has been built, or (2) provide a suitable guarantee that the infrastructure will be built within a three-year period. Kootenai County Subdivision Ordinance § 3.02(4). Unlike the Bonneville County Zoning Ordinance at issue in *South Fork Coalition*, where the Board's preliminary approval served only as an "approval in principle," the Board's preliminary approval under the Kootenai County Subdivision Ordinance serves as a green light for construction to begin. Although the developer must still obtain the necessary permits from the applicable agencies in order to begin site grading

for roads and other physical changes, there is no further action required by the Board before construction may commence. The developer must still obtain final plat approval from the Board, but final plat approval under the Kootenai County Subdivision Ordinance appears to function as a confirmation of compliance on a project that may be near completion. Consequently, the district court concluded that judicial review is available at the preliminary plat stage in order to rectify any alleged errors in the application process. This Court agrees with the district court. Due to the nature of the Kootenai County Subdivision Ordinance, judicial review is appropriate once preliminary plat approval is obtained. This result is consistent with the Court's recent holding in *Payette River Property Owners Ass'n v. Board of Commissioners of Valley County*, 132 Idaho 551, 976 P.2d 477 (1999).

In *Payette River*, this Court held that "where preliminary plat approval and the issuance of permits places a developer in a position to take immediate steps to permanently alter the land before final approval, the decision is final for purposes of challenging the authorized action that permits the material alteration and can be reviewed on appeal." *Id.* at 554, 976 P.2d at 481. The developer in *Payette River* intended to develop a thirty-eight lot subdivision on a tract of land adjacent to the North Fork of the Payette River. Most of the land in the proposed subdivision was located in a flood-prone area. *Id.* at 552, 976 P.2d at 479. The developer first applied to the county engineer for a flood plain development permit which was approved. The developer then applied for a conditional use permit and approval of a preliminary subdivision plat, which was approved by the Valley County Board of Commissioners (Board). *Id.* The Payette River Property Owners Association, Inc. petitioned for judicial review. The district court reversed the Board's decision and the developer appealed to this Court.

The developer argued that the appeal should be dismissed because the Board's decision was not a final agency decision subject to judicial review, relying on *Bothwell v. City of Eagle*, 130 Idaho 174, 938 P.2d 1212 (1997),

which relied on *South Fork Coalition* to hold that approval of a preliminary plat is not a final decision subject to judicial review. *Payette River*, 132 Idaho at 553–54, 976 P.2d at 480–81. *Payette River* recognized that generally preliminary plat approval is not a final decision because final approval must still be obtained before a developer can build on the land; nevertheless, the Court held that the Board's decision was a final decision subject to judicial review. The Court based its ruling on the fact that the conditional use permit for the preliminary subdivision plat, combined with the flood plain permit, allowed the developer to "significantly alter[ ] the land in such a way that would not permit, if final approval were ultimately not obtained, the land to be returned to the status quo." *Id.* at 554, 976 P.2d at 481. Preliminary plat approval, together with the issuance of permits, "place[d the] developer in a position to take immediate steps to permanently alter the land before final approval," making the Board's decision final for purposes of challenging the authorized action on appeal. *Id.*

The Court in *Payette River* distinguished *Bothwell* "on the basis that in *Bothwell*, unlike the instant case, no permits had been issued that would have allowed an immediate and material alteration of the land." *Id.* In *Bothwell*, the developer applied for approval of a preliminary subdivision plat and a flood plain development permit. The city council approved the preliminary plat application, but the council did not approve or deny the flood plain permit application. 130 Idaho at 175, 938 P.2d at 1213. *Bothwell* held that the order granting preliminary plat approval was not a final decision subject to review because the city council had not yet approved the developer's final plat application and the flood plain permit application. *Id.* at 176, 938 P.2d at 1214. The issuance of a flood plain permit was a condition for the issuance of any building permit in a special flood hazard area. *See* EAGLE CITY CODE § 10–1–7(A). Had the city council approved both the developer's application for approval of the preliminary subdivision plat and the flood plain development permit, the developer would have been in the position to take immediate steps to permanently alter the land before the city council's final plat approval.

See EAGLE CITY CODE § 9–2–4(D), which like the Kootenai County Subdivision Ordinance, requires that construction of certain improvements be either completed prior to final plat approval, or the developer provide a suitable guarantee for their completion as a condition to final plat approval.

The result in this case does not conflict with the Court's previous holdings in *South Fork Coalition* and *Bothwell,* where the Court concluded that the orders granting preliminary plat approval were not appealable orders. Further, *Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998), is not preclusive authority on this issue. *Castaneda* cited *South Fork Coalition* and *Bothwell* for the general proposition that an order granting preliminary plat approval is not an appealable order. However, the question of whether an order granting preliminary plat approval which allows physical changes to the land is an appealable order was not an issue in *Castaneda.* The Court cited *South Fork Coalition* for the proposition that preliminary plat approval that constitutes merely "approval in principle" is not appealable. *Id.* That principle remains. However, the ordinances in *South Fork Coalition* and *Bothwell* were different from the ordinances in *Payette River* and this case which allow material alteration of the land before final approval of the plat.

According to *Payette River,* appealability turns on whether preliminary plat approval allows the developer to take immediate steps to permanently alter the land before final plat approval. The process for obtaining preliminary plat approval is not a uniform process; it varies from one county ordinance to another. Thus, whether an order granting preliminary plat approval is appealable depends upon the nature of the governing ordinance. The governing ordinance in this case allowed the developer to take immediate steps to permanently alter the land by constructing the necessary infrastructure prior to final plat approval. No further action by the Board was required before the developer can begin construction. The Board's order granting preliminary plat approval is a final decision subject to judicial review.

### V.

### UNDER THE PROCEDURAL POSTURE OF THIS CASE RKO'S FAILURE TO APPEAL THE DISTRICT COURT'S ORDER AFFIRMING THE BOARD'S GRANT OF FINAL PLAT APPROVAL DOES NOT PRECLUDE IT FROM OBTAINING A RULING ON THOSE ISSUES RAISED IN ITS CROSS–APPEAL FROM THE ORDER GRANTING PRELIMINARY PLAT APPROVAL.

This case has a long and complex history. The Court has previously considered whether RKO's cross-appeal from the preliminary plat approval should be dismissed and determined that it would not be dismissed. Proceedings were allowed to continue before the Board and in the district court while retaining the cross-appeal. Consequently, RKO is not precluded from obtaining a ruling on those issues raised in its initial cross-appeal from the order granting preliminary plat approval.

### VI.

### THE ISSUE OF WHETHER THE RECORD SUPPORTS A FINDING OF FEASIBILITY WITH RESPECT TO McCORMACK'S PROPOSED WATER SYSTEM IS MOOT.

RKO argues that the record does not support a finding that the water system which McCormack proposed for the subdivision was "feasible" at the time preliminary plat approval was sought. Even if this Court were to agree with RKO, such a determination by this Court would have no legal significance at this point. The issue is moot.

Under the Kootenai County Subdivision Ordinance (subdivision ordinance), prior to obtaining preliminary plat approval, the developer must submit written evidence to the P & Z Commission that the Health District has acknowledged its subdivision proposal and is satisfied that "the proposed method of sewage disposal and water supply is adequate and possible to be utilized" for the proposal. KOOTENAI COUNTY SUBDIVISION ORDINANCE, *Appendix A—Procedures for Preliminary Plat Approval* § A.1(2)(a). Prior to obtaining preliminary plat approval, the developer must also provide

[w]ritten assurance from the applicable reviewing agencies to the effect that adequate provisions have been made for [road, water, sewage and fire protection] systems and that their use herein does not have an adverse effect upon the public's health, safety, or welfare.

*Id.* § 2.06(5). The district court properly concluded that the Board must find that the developer's proposed road, water, sewage and fire protection systems are "feasible" before granting approval of the preliminary plat.

Once preliminary plat approval is obtained, but prior to obtaining final plat approval, the developer must provide written comments from the Health District "[t]hat the planned sewage disposal system and water supply systems have been designed and approved." *Id.* § 3.01(1). Section 3.02(2) also requires that upon submittal of the final plat to the P & Z Commission the Plat Administrator shall determine that the final plat "bears all the dedication certificates and statements of approval required by this Ordinance." *Id.* § 3.02(2). Thus, under Article 3.0 of the subdivision ordinance, the Board cannot grant final plat approval unless the applicable reviewing agency has given its formal "approval" of the water supply system.

Formal approval of McCormack's proposed water supply system was granted by the Department of Environmental Quality on September 1, 1995. With formal approval obtained, the question of whether the proposed water supply system was feasible at the time preliminary plat approval was sought is irrelevant. RKO has not cited any authority that suggests that this Court should, or could, render the applicable reviewing agency's approval null and void simply because feasibility was not proven at the preliminary plat approval stage.

## VII.

## RKO LACKS STANDING TO RAISE ITS DUE PROCESS ARGUMENT WITH RESPECT TO THE APRIL 6, 1994, AND APRIL 20, 1994, MEETINGS.

### A. Factual Background

Two public hearings were held before the Board regarding the approval of McCormack's preliminary plat, one on December 7, 1993, and the other on December 21, 1993. On January 5, 1994, the Board met again at which time it entered its formal decision granting approval of McCormack's preliminary plat.

On April 6, 1994, the Board held a regular meeting (in compliance with the Idaho Open Meetings Act, I.C. §§ 67–2340 to –2347), at which time it addressed McCormack's request to change the location and route of a previously proposed water line. The Board unanimously approved the change in location and route of the water line, concluding that such a change was "not a substantial change from the original approval." The Board then agreed to table its decision until McCormack had "provided proof that the easements have been obtained and [had informed the Board as to whether] any blasting will occur on the site."

On April 20, 1994, the Board held another regular meeting in continuation of its April 6th regular meeting. During this meeting, counsel for McCormack informed the Board that "they [did] not know if there will be any blasting; however, they are willing to agree that if the adjoining property owners within 200 feet provide information regarding their wells beforehand and their water flow is affected, they will provide water to them at no charge." At the conclusion of the meeting, one of the commissioners directed the staff to draft written findings that the request to reroute the water line was not a substantial change to the Order of Decision.

Section 67–6509(b) of the Local Land Use Planning Act of 1975 provides: "Following the [public] hearing of the governing board, if the governing board makes a material change in the plan, further notice and hearing shall be provided before the governing board adopts the plan." RKO contends that new evidence was submitted during the Board's April 6th and 20th meetings, and the changes which resulted from those meetings were "material changes" which were incorporated into the Board's January 5, 1994, Order of Decision; thus, it was entitled to proper notice of the meetings.

A threshold question is whether RKO has standing to argue that its procedural due process rights were violated as a result of not receiving proper notice of the meetings. This Court concludes that RKO lacks standing to raise this issue.

### B. Standing

 In order to have standing, RKO must show that it has a personal stake in the outcome of this controversy. "[T]his requirement of 'personal stake' has come to be understood to require not only a 'distinct palpable injury' to the plaintiff, but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct." *Butters v. Hauser,* 131 Idaho 498, 500, 960 P.2d 181, 183 (1998) (quoting *Miles v. Idaho Power Co.,* 116 Idaho 635, 641, 778 P.2d 757, 763 (1989)). Simply because RKO's members may own property near the proposed subdivision, the location of their property alone does not confer standing. *Id.* at 501, 960 P.2d at 184; *Student Loan Fund of Idaho, Inc. v. Payette County,* 125 Idaho 824, 827–28, 875 P.2d 236, 239–40 (Ct.App.1994). As the Court of Appeals explained in *Student Loan Fund,*

> Status as an owner of land within a designated area does not relieve a complainant of the necessity of demonstrating a "distinct palpable injury" traceable to the challenged governmental conduct. It is the quality or magnitude of the injury suffered which must differentiate a plaintiff from the citizenry at large in order to confer standing. The situs of owned property in relationship to an area touched by an ordinance is relevant to a standing inquiry only insofar as the property's location exposes the landowner to peculiarized harm.

125 Idaho at 828, 875 P.2d at 240. In order to have standing to challenge the agency's failure to comply with the statutory procedures for conducting open public meetings under I.C. §§ 67–2342 and 67–6509, the plaintiff must show that a harm or peril personal to the plaintiff is caused by the agency's actions. *Id.* RKO has not presented any evidence that any of its members are abutting or otherwise affected real property owners. RKO has failed to present any evidence of a peculiarized harm. Thus, RKO lacks standing to raise this issue.

### VIII.

### THE BOARD ERRED BY NOT DETERMINING THE OWNERSHIP OF THE EIGHTY ACRES OF SUBMERGED LANDS LOCATED WITHIN THE WILDLIFE SANCTUARY OF THE PUD.

RKO contends that the Board erred by not determining the ownership of all the land in the PUD, specifically, eighty acres of submerged land located within the wildlife sanctuary of the PUD. The district court concluded that, even though the Board did not make a specific finding as to ownership of the submerged land, the ownership of this land was not a significant issue in the Board's overall approval of the PUD. This Court concludes that the Board's decision not to determine ownership of the submerged lands violated the applicable provisions of the Kootenai County Zoning Ordinance.

Section 15.07 of the Kootenai County Zoning Ordinance (zoning ordinance), which addresses the procedures for establishing a PUD, provides in pertinent part:

> C. The applicant shall also submit a written statement providing the following information:
>
> . . . .
>
> 3. Proof of the present ownership of all of the land included within the [PUD] and the applicant's interest in the land proposed for development.

KOOTENAI COUNTY ZONING ORDINANCE § 15.07(C)(3). Section 15.01 of the zoning ordinance recognizes that "[c]ommon open space for recreational purposes may be an element of the development." If common open space is included in a proposal for a PUD, it must meet certain standards outlined in section 15.06 of the zoning ordinance.

In its application for preliminary plat approval McCormack proposed that 100 acres of its 218–acre PUD would be considered common open space and that the 100 acres would function as a wildlife sanctuary. Eighty acres of this 100–acre wildlife sanctuary is flooded meadows submerged under

Lake Coeur d'Alene. McCormack submitted a commitment for title insurance as evidence of its ownership interest in the land located in the PUD, including the land located in the wildlife sanctuary. This document, however, excludes assurance of title to the eighty acres of submerged land within the wildlife sanctuary. The record also contains a letter from the Idaho Department of Land, wherein the State asserts a claim to "all submerged lands below elevation 2,128 feet sea level Washington Water datum."[1]

The letter from the Idaho Department of Lands claiming ownership in all submerged land below 2,128 feet sea level raises the question: Who owns the submerged eighty acres of land in the wildlife sanctuary? The Board did not resolve this question in its January 5, 1994, decision, nor could it have. It does not have jurisdiction over such matters. The ownership question could only have been resolved by a quiet title action brought before a court. *See generally Erickson v. State,* 132 Idaho 208, 970 P.2d 1 (1998). Prior to final plat approval, McCormack conveyed whatever interest it may have had in the eighty acres of submerged land to the State. The question is whether, under the zoning ordinance, common open space in a PUD can consist of public lands. A review of the applicable provisions in the zoning ordinance suggests that it cannot.

Generally, there is a strong presumption of favoring the validity of the Board's application and interpretation of its own zoning ordinance. *Howard v. Canyon County Bd. of Comm'rs,* 128 Idaho 479, 480, 915 P.2d 709, 710 (1996). This Court defers to the Board's application and interpretation of its zoning ordinance, unless such application or interpretation is capricious, arbitrary or discriminatory. *See South Fork Coalition v. Board of Comm'rs of Bonneville County,* 117 Idaho 857, 860, 792 P.2d 882, 885 (1990).

The Board and McCormack's position is that all that is required under section 15.07 of the zoning ordinance is proof of present ownership, including the applicant's interest in the land located in the PUD, not proof that the applicant has uncontroverted ownership of the land. The Board believed that the commitment for title insurance submitted by McCormack was sufficient to meet the requirements of section 15.07. The Board also takes the position that, because the land in the wildlife sanctuary was intended to be transferred to the Nature Conservancy which would preserve the area for the benefit of the wildlife and the public, any adverse claim by the State in the submerged lands would not conflict with the intended use of the wildlife sanctuary. According to the Board, any adverse claim by the State was not a significant issue for approval of the PUD.

Although section 15.07 is not entirely clear as to whether the applicant must own all of the land in the PUD, section 3.02(3) of the subdivision ordinance makes it clear that upon submittal of the final plat, the applicant must submit a title report which "confirms the title of the land on the proposed subdivision is listed in the name of the owner whose signature appears on the plat." Assuming the applicant/developer is the only party required to sign the plat, it follows that the applicant must be the owner of all of the land in the proposed development. Additionally, section 15.06 of the zoning ordinance which deals with common open space, provides:

> All land shown on the final development plan as common open space shall be *conveyed* to an individual or organization responsible for ownership and maintenance of the open space.... *The individual or organization shall not dispose of the common open space without approval by the Board.*

KOOTENAI COUNTY ZONING ORDINANCE § 15.06(E) (emphasis added).

If the State owns the submerged eighty acres of land, according to section 15.06, the State's ability to dispose of that land is apparently subject to the Board's approval. However, the law is well settled that "after statehood, the state holds the title to the beds of the navigable streams and *may dispose of them if it desires to do so to private owners,*" as long as "no such disposition ... interfere[s] with the rights of the general government to regulate commerce on such navigable streams, or in any manner interfere[s] with the right to the use of the navi-

---

1. "Washington Water datum" appears to refer to Washington Water Power datum.

gable lakes, rivers or streams as public highways over which every citizen has a natural right to carry commerce...." *Callahan v. Price,* 26 Idaho 745, 754, 146 P. 732, 735 (1915). The only way the State's right of disposal would be subject to the Board's approval is if the submerged eighty acres originally belonged to McCormack and McCormack conveyed its interest in such lands subject to the conditions imposed by section 15.06. Because the question of ownership was never resolved, it remains unclear whether the State is bound by the conditions imposed by section 15.06. If the State is not bound by section 15.06, or any action taken by the Board in this matter, the State is certainly not bound by the Nature Conservancy's agreement to preserve the land as a wildlife sanctuary.

The requirements in sections 3.02(3) and 15.06 suggest that the applicant must own all of the land in the PUD, and may not include public lands as common open space within the PUD. Other language in section 15.06(E) provides:

> The use and improvement of the common open space shall be planned in relation to any existing public or semi-public open space which *adjoins* or is *within one thousand (1,000) feet* of the perimeter of the [PUD].

(Emphasis added). This language contemplates public or semi-public open space which "adjoins" or is nearby the PUD, but it does not contemplate public open space within the PUD itself.

The Board's determination that McCormack need not present proof of its uncontroverted interest in all of the land in the PUD, including the submerged eighty acres, violates Article 15 of the zoning ordinance. The district court's decision concerning the Board's duty to determine ownership of the submerged lands is vacated and the matter is remanded to the district court with instructions to remand the matter to the Board. The Board must reconsider McCormack's application of a proposed PUD and ninety-two lot subdivision without considering the eighty acres of submerged land currently owned by the State. The Board must make new factual findings with respect to ownership of all

the lands in the PUD and whether the applicable provisions of the zoning ordinance concerning common open space are met.

## IX.

## THE TRANSCRIPTS OF THE PROCEEDINGS BELOW ARE ADEQUATE FOR JUDICIAL REVIEW.

Section 67–6536 of the Local Land Use Planning Act of 1975 provides: "In every case in this chapter where an appeal is provided for, a transcribable verbatim record of the proceeding shall be made and kept for a period of not less than six (6) months after a final decision on the matter." This Court has recognized that "the absence of a transcribable verbatim record" of zoning or land use proceedings may result in a violation of a party's right to procedural due process. *Chambers v. Kootenai County Bd. of Comm'rs,* 125 Idaho 115, 118, 867 P.2d 989, 992 (1994) (citing *Cooper v. Board of County Comm'rs of Ada County,* 101 Idaho 407, 411, 614 P.2d 947, 951 (1980)). "[A] transcribable record [is] indispensable to meaningful judicial review of rezoning proceedings where the sufficiency of notice, adequacy of opportunity to present or to rebut evidence, or the existence of evidence supporting the agency's findings may be put at issue." *Gay v. County Comm'rs of Bonneville County,* 103 Idaho 626, 629, 651 P.2d 560, 563 (Ct.App.1982).

The transcripts of the various proceedings below are replete with inaudible omissions. The district court recognized that the various inaudible omissions in the transcripts made judicial review "difficult," but it nevertheless concluded that the transcripts were adequate for purposes of ascertaining the basis of the Board's decision. The district court stated:

> One who did not participate in the proceedings, who picks up any of the transcripts noted by the Court hereinabove as having a particularly large number of deletions, would be hard pressed to make any sense of the printed matter. However, by virtue of a careful sequential reading of all the transcripts, from page one of the first proceeding, together with a meticulous review of the minutes of all proceedings, it

becomes clear to the reader that in most instances the deletions were very brief and can be "decoded" either by context, reference to the minutes, reference to written statements of persons speaking, or reference to other documents in the agency record. In many instances the omissions were not of critical information. Review is made difficult, of course, and, at times, very frustrating. . . .

In any event, the Court was able to determine the basis upon which the Commission made its recommendation and the Board made its decision from the entire transcript and record, and [RKO's] claim here is not sustainable.

RKO seeks a strict application of the "verbatim" requirement under I.C. § 67–6536, maintaining that the transcripts should reflect the content of the agency proceedings word-for-word. However, the somewhat informal, quasi-judicial nature of these proceedings makes satisfaction of such a requirement difficult.

All four public hearings held in this case were tape recorded and the documents presented at the hearings as exhibits were preserved in the record. The transcripts, and the record as a whole, adequately reflect that the parties were given notice of the proceedings and that they were given ample opportunity to present or rebut evidence.

RKO refers to specific portions of the transcripts that it believes are inadequate. Although these portions of the transcripts are replete with inaudible omissions, the "defect" caused by these omissions is curable. The individuals whose testimony has omissions objected to by RKO also submitted written testimony which is essentially duplicative of their oral testimony before the Board and the P & Z Commission. Furthermore, the individuals whose oral testimony is transcribed in these "questionable" portions of the transcript are generally individuals who opposed the proposed development. The minutes to three of the four public hearings held in this case sufficiently summarize the points of opposition made by these individuals. Thus, the "defect" caused by the inaudible omissions in the transcripts is cured by the written testimony contained in the record

and the detailed minutes of the public hearings.

The district court's conclusion that the transcripts are adequate for judicial review is affirmed.

## X.

### THE BOARD MADE ADEQUATE FINDINGS OF FACT.

Section 67–6535(b) of the Local Land Use Planning Act of 1975 provides:

The approval or denial of any application provided for in this chapter shall be in writing and accompanied by a statement in the form of findings of fact and conclusions of law that explain the criteria and standards considered relevant, state the facts relied upon, and explain the justification for the decision based on the criteria, standards and facts set forth.

RKO claims the Board's findings of fact are general assertions devoid of any specific facts which the Board may have deemed relevant to its decision. Specifically, RKO claims the Board's findings with respect to ownership of all the land in the PUD are insufficient. As previously discussed, the Board did not make a specific finding as to ownership of all the land in the PUD; therefore, its findings of fact are deficient in this respect. Under the zoning ordinance, common open space in a PUD may not consist of public lands. Consequently, all of the Board's findings with respect to common open space and the wildlife sanctuary are also suspect.

RKO also argues that the Board's findings are inadequate with respect to the feasibility of the proposed sewage treatment, storm water treatment and water supply system. The district court concluded that the record did not support a finding of feasibility with respect to the proposed sewage treatment and storm water treatment, and remanded the matter back to the Board on that basis. Accordingly, there is no need for this Court to address this portion of RKO's argument. This Court has already addressed the issue of feasibility with respect to the proposed

water supply system and has determined that the issue is moot.

RKO claims the most "blatant deficiencies" are found on pages 5 through 10 of the Board's Order of Decision where the Board attempts to present findings and conclusions in accordance with the Comprehensive Plan. RKO claims that findings Nos. 1, 2, 3, 4, 6, 7, 8 and 9 contain conclusory statements without specific factual support. As previously noted, those findings which address common open space and the wildlife sanctuary are suspect—specifically, findings Nos. 2, 7, 8 and 9. Findings Nos. 1, 3, 4 and 6, on the other hand, comply with the requirements of I.C. § 67–6535(b). With respect to these findings, the Board clearly set forth the ultimate facts relevant to its decision, and the facts are supported by the record.

Other than the deficiencies outlined above, the remainder of the Board's factual findings are adequate and meet the requirements set forth in I.C. § 67–6535(b).[2] Again, the Board on remand will need to: (1) reconsider McCormack's application for a proposed PUD and ninety-two lot subdivision without considering the eighty acres of submerged land owned by the State; and (2) make new factual findings with respect to ownership of all the lands in the PUD and whether the applicable provisions of the zoning ordinance concerning common open space are met.

## XI.

## RKO IS ENTITLED TO AN AWARD OF ATTORNEY FEES ON APPEAL UNDER I.C. § 12–117, BUT NOT UNDER THE PRIVATE ATTORNEY GENERAL DOCTRINE.

RKO requests an award of attorney fees and costs on appeal. RKO's request for an award of attorney fees is based on the Private Attorney General Doctrine and I.C. § 12–117.

[2]. The district court concluded that the Board's finding No. 5 concerning compliance with Goals # 8 and # 9 of the Comprehensive Plan needed more clarification and remanded that portion of the decision back to the Board. McCormack originally appealed the district court's decision in this respect, but that issue was dismissed

### A. Private Attorney General Doctrine

RKO argues that by bringing the underlying action and defending the present appeal it has insured enforcement of the ordinance protecting the residents of Kootenai County from the results of inadequately designed or implemented sewage and storm water facilities. The district court found that the record did not support a finding of feasibility with regard to McCormack's proposed sewage treatment and storm water treatment and remanded the case back to the Board. While McCormack initially appealed that portion of the district court's decision, McCormack's appeal was dismissed. Therefore, RKO is no longer required to defend the district court's decision on appeal. Since the basis for RKO's argument under this theory is no longer an issue before this Court, RKO's request for attorney fees in this regard is denied.

### B. I.C. § 12–117

Section 12–117(1) provides:

In any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the person reasonable attorney's fees, witness fees and reasonable expenses, if the court finds in favor of the person and also finds that the state agency, the city, the county or the taxing district acted without a reasonable basis in fact or law.

This section provides for an award of attorney fees against a Board of County Commissioners, assuming the Court finds in favor of the individual and that the Board acted without a reasonable basis in fact or law. *See Ockerman v. Ada County Bd. of Comm'rs,* 130 Idaho 265, 266–267, 939 P.2d 584, 585–86 (Ct.App.1997).

The Board acted without a reasonable basis in fact when it granted approval of McCormack's preliminary plat after conclud-

when McCormack's appeal was dismissed. Technically, the Board's finding No. 5 is inadequate for the reasons stated by the district court. Nevertheless, the Board apparently addressed this area of concern in its Order on Remand, dated November 22, 1995. That Order is not a part of the record before this Court.

ing that McCormack's proposal complied with the applicable ordinance requirements for common open space and proof of ownership, when in fact it did not so comply. Accordingly, RKO's request for attorney fees under I.C. § 12–117 is granted.

### C. Costs

■ Pursuant to Rule 40(a) of the Idaho Appellate Rules (I.A.R.), "[c]osts shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." Although RKO did not prevail on all of the issues it raised on appeal, it did prevail on the most significant issue—the Board's failure to address the issue of ownership of the submerged lands. *See Chadderdon v. King*, 104 Idaho 406, 659 P.2d 160 (Ct.App.1983) (trial court did not abuse its discretion in awarding costs to defendant contractor in breach of contract action where the contractor prevailed on the main issue of the case although he was denied affirmative relief on his counter-claim). Because RKO prevailed on the most significant issue in this appeal, RKO is the prevailing party on appeal and is entitled to an award of costs pursuant to I.A.R. 40(a).

■ Costs should be levied against both McCormack and the County. Section 12–117 provides a basis for recovery of attorney fees and "reasonable expenses" against a county. I.C. § 12–117(1). Furthermore, although this Court has never addressed the issue of whether costs may be levied against an intervening party, several federal courts have approved the levying of costs against an intervening party under Rule 54(d) of the Federal Rules of Civil Procedure, which is analogous to Rule 54(d) of the Idaho Rules of Civil Procedure. *See Carter v. General Motors Corp.*, 983 F.2d 40, 44 (5th Cir.1993); *Swiftships Freeport, Inc. v. M.V. Cayman Endeavor*, 692 F.Supp. 722, 723 (S.D.Tex.1988). In *Carter* and *Swiftships Freeport, Inc.*, the courts recognized that costs should be taxed to the extent of the intervenor's activity in the case. The reasoning of these cases on this issue is persuasive. McCormack, the intervening party, was very active in this appeal; in fact, it initiated the appeal. Accordingly, McCormack shall share the burden of appellate costs with the County.

### XII.

### CONCLUSION

The district court's decision concerning whether the Board properly determined ownership of all the lands contained within the PUD is vacated and remanded to the district court with instructions to remand to the Board with directions to reconsider McCormack's application for a proposed PUD and ninety-two lot subdivision, without giving consideration to the eighty acres of submerged land. The Board must also make new factual findings with respect to ownership of all the lands in the PUD and whether the applicable provisions of the Kootenai County Zoning Ordinance concerning common open space are met.

The remainder of the district court decision is affirmed.

Attorney fees and costs on appeal are awarded to RKO.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.