52 P.3d 840

SANDERS ORCHARD, a partnership, composed of Maurice Sanders and Sandy Sanders; and Sands Orchards, Inc., Petitioners–Respondents,

v.

GEM COUNTY, Idaho, by and through its BOARD OF COUNTY COMMISSIONERS, Respondent–Appellant.

No. 26629.

Supreme Court of Idaho, Boise, January 2002 Term.

May 31, 2002.

Rehearing Denied Aug. 6, 2002.

Richard K. Linville, Gem County Prosecuting Attorney, Emmett, for appellant.

Westberg, McCabe & Collins, Boise, for respondents. P. Larry Westberg argued.

EISMANN, Justice.

## I. FACTS AND PROCEDURAL HISTORY

Sanders Orchard desires to sell for residential development approximately 131 acres of its real property located near the city of Emmett in Gem County, Idaho. Under the Gem County Comprehensive Plan, that property was designated as Agricultural/Natural Resources, which only permitted limited residential development. On April 1, 1997, Sanders Orchard initiated proceedings to change the Comprehensive Plan designation with respect to that property from Agricultural/Natural Resources to Urban Residential, which would permit residential development. On May 4, 1998, the Gem County Board of Commissioners (Board) approved the change.

Sanders Orchard then instituted proceedings to change the zoning classification of the property from A–4 Agricultural Residential, which requires a five-acre minimum lot size, to B–1 Residential, which requires a one-half acre minimum lot size. On September 14, 1998, the Gem County Planning and Zoning Commission recommended that the rezone be denied. Sanders Orchard appealed that decision to the Board, who approved the zoning change on November 9, 1998. When approving the change, the Board included a requirement that any subdivision developed on the property must have a minimum lot size of one acre.

On August 21, 1998, while the rezoning proceedings were pending, Properties West, Inc., submitted for approval a subdivision application and preliminary plat. It sought to subdivide approximately 62 acres of the Sanders Orchard property into a 46 lot subdivision that had minimum lot sizes of one acre. The application indicated that the lots would each have their own water and sewer.

Under the Gem County Subdivision Ordinance, a request to approve a preliminary plat for a subdivision is first heard by the Planning and Zoning Commission. A party aggrieved by the decision of the Commission can then appeal to the Board who, after a public hearing and considering any additional information, can uphold, conditionally uphold, or overrule the decision of the Planning and Zoning Commission.

On November 9, 1998, the Planning and Zoning Commission held a public hearing on the application for the preliminary plat. At the conclusion of the hearing, the Commission denied the application because, "The Preliminary Plat did not have a proposal for central water and sewer system as required by the Gem County Zoning Ordinance." Sanders Orchard and Properties West, Inc., then appealed that denial to the Board, who heard the appeal on December 7, 1998.

By order issued on February 1, 1999, the Board upheld the action of the Planning and Zoning Commission denying approval of the preliminary subdivision plat. In doing so, it concluded, "[I]t is reasonable and consistent with the Gem County Zoning Ordinance to require central water and sewer systems in this application given the close proximity of the subdivision to the City of Emmett and the future development of residential subdivisions in that area."

On March 1, 1999, Sanders Orchard filed this action seeking judicial review of the Board's action denying approval for the preliminary subdivision plat. The district court determined that the Board exceeded its statutory authority in requiring that the subdivision have central water and sewer and that the Board's findings of fact and conclusions of law were not supported by substantial evidence considering the record as a whole. The district court set aside the Board's order issued on February 1, 1999, and awarded Sanders Orchard costs and attorney fees pursuant to Idaho Code § 12–117. Gem County then filed this appeal.

## II. ANALYSIS

 A person aggrieved by a planning and zoning decision may seek judicial review of that decision under the Idaho Administrative Procedures Act (IAPA). IDAHO CODE § 67–6521(d) (2001). On an appeal from a decision of a district court acting in its appellate capacity under the IAPA, this Court reviews the agency record independently of the district court's decision. *Price v. Payette County Board of County Commissioners,* 131 Idaho 426, 958 P.2d 583 (1998). This

Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. *Id.*; IDAHO CODE § 67–5279(1) (2001). Rather, this Court defers to the agency's findings of fact unless they are clearly erroneous. *Price v. Payette County Board of County Commissioners,* 131 Idaho 426, 958 P.2d 583 (1998). There is a strong presumption of favoring the validity of the actions of zoning boards, which includes the application and interpretation of their own zoning ordinances. *Rural Kootenai Org., Inc. v. Board of Commissioners,* 133 Idaho 833, 993 P.2d 596 (1999). The Board's zoning decision may be overturned only where it: (a) violates statutory or constitutional provisions; (b) exceeds the agency's statutory authority; (c) was made upon unlawful procedure; (d) is not supported by substantial evidence in the record as a whole; or (e) is arbitrary, capricious, or an abuse of discretion. *Price v. Payette County Board of County Commissioners,* 131 Idaho 426, 958 P.2d 583 (1998); IDAHO CODE § 67–5279(3) (2001). In addition, the Board's zoning decision must be upheld if substantial rights of the appellant have not been prejudiced. *Payette River Prop. Owners Ass'n v. Board of Commissioners,* 132 Idaho 551, 976 P.2d 477 (1999); IDAHO CODE § 67–5279(4) (2001).

**a. Did the Board have discretion to require that there be a proposal for central water and sewer submitted in connection with the preliminary subdivision plat?**

The real property at issue is zoned B–1 Residential. The zoning ordinance describes that zone as follows:

1. Idaho Code § 67–6519 provides, in part, as follows:
 Whenever a governing board or zoning or planning and zoning commission grants or denies a permit, it shall specify:
 (a) The ordinance and standards used in evaluating the application;
 (b) The reasons for approval or denial; and
 (c) The actions, if any, that the applicant could take to obtain a permit.
2. The relevant portion of the Ordinance provides as follows:
 8. Commission Action—
 a. Hearing by Commission—Within a reasonable time following the Committee's rec-

The purpose of this zone is to provide and protect residential lands properly located for families who desire to live in an environment of single family dwellings. Because of the smaller lot sizes permitted, this zone shall be confined to those areas which can be served by central water, and which may in the future reach densities of development which can be served by central sewage systems.

The zoning ordinance also provides a schedule of minimum lot sizes within the various zones. The minimum lot size for each dwelling unit in the B–1 zone is ½ acre, but that lot size "[m]ay be reduced if on central water and sewer." Sanders Orchard argues that because the zoning ordinance does not expressly require central water and sewer facilities in the B–1 zone, the Board had no authority to impose that requirement.

■ Idaho Code § 67–6519[1] grants the governing board of the county the discretion to grant or deny an application for a permit authorized or mandated by the Local Land Use Planning Act, Idaho Code §§ 67–6501 *et seq. McCuskey v. Canyon County,* 123 Idaho 657, 851 P.2d 953 (1993). *See also Brown v. Schafer,* 96 Idaho 599, 532 P.2d 941 (1975) (holding that the decision of county commissioners approving a subdivision is reviewed under abuse of discretion standard). That discretion is not unbounded, however. *Urrutia v. Blaine County,* 134 Idaho 353, 2 P.3d 738 (2000). The Gem County Subdivision Ordinance lists several factors that the Board is to consider when deciding whether or not to approve a preliminary plat.[2] Those fac-

 ommendation, the Commission shall review the preliminary plat, the report from the Committee, comments from concerned persons and agencies and the report from the Administrator to arrive at a decision on the preliminary plat.
 b. Commission's Findings—In determining the acceptance of a proposed subdivision the Commission shall consider the objectives of this Ordinance and at least the following:
 1. The conformance of the subdivision with the Comprehensive Plan;
 2. The availability of public services to accommodate the propose [sic] development;

tors include, "The conformance of the subdivision with the Comprehensive Plan."

 The Subdivision Ordinance's requirement that the Board consider the "conformance of the subdivision with the Comprehensive Plan" does not incorporate by reference all of the provisions of the Comprehensive Plan into the Subdivision Ordinance. *Id.* When exercising discretion to approve or deny a subdivision application, the governing board can consider whether the application is consistent with the overall goals of the comprehensive plan. *Id.* at 359, 2 P.3d at 744 ("[T]he Board erred in relying completely on the comprehensive plan in denying the applications, and should instead have crafted its findings of fact and conclusions of law to demonstrate that the goals of the comprehensive plan were considered, but were simply used in conjunction with the zoning ordinances, the subdivision ordinance and any other applicable ordinances in evaluating the proposed developments."); *South Fork Coalition v. Board of Commissioners,* 117 Idaho 857, 863–64, 792 P.2d 882, 888–89 (1990) ("The Board of County Commissioners' Findings of Fact, Conclusions of Law and Decision, demonstrates careful consideration of the requirements of ordinance § 1–2520 as

 3. The public financial capability of supporting services for the proposed development;
 4. The other health, safety or environmental problems that may be brought to the Commission's attention; and
 5. All plats within one (1) mile of the city shall be processed as per State Code 50–1306 and/or designated area of impact.
 c. Action on Preliminary Plat—The Commission may approve, conditionally approve, disapprove or table the preliminary plat for additional information. .... Upon granting or denying a preliminary plat, the Commission shall specify:
 1. The ordinance and standards used in evaluating the application;
 2. The reasons for approval or denial; and
 3. The actions, if any, that the applicant could take to obtain a permit.

**3.** Various excerpts from the comprehensive plan are quoted below:
 **Land Use**
 ....
 **Area of City Impact**
 In compliance with Idaho Code, the City of Emmett and Gem County must adopt a mutually acceptable Emmett Area of City Impact.
 The proposed Area of City impact boundary is shown on the enclosed land use map. The

well as a factual inquiry into whether or not the proposal was in accordance with the Bonneville County Comprehensive Plan. The Board's conclusion should be reversed only if found to be arbitrary and capricious.") The governing board cannot, however, deny a use that is specifically permitted by the zoning ordinance on the ground that such use would conflict with the comprehensive plan. *Urrutia v. Blaine County,* 134 Idaho 353, 359, 2 P.3d 738, 744 (2000). "A comprehensive plan reflects the 'desirable goals and objectives, or desirable future situations' for the land within a jurisdiction", *Id.* at 357, 2 P.3d at 742, but it does not operate as a legally controlling zoning law. *Id.* If there is a conflict between the comprehensive plan and a use permitted under the zoning ordinance, the zoning ordinance controls. *Urrutia v. Blaine County,* 134 Idaho 353, 2 P.3d 738 (2000); *Bone v. City of Lewiston,* 107 Idaho 844, 693 P.2d 1046 (1984).

The land upon which Sanders Orchard desires to construct the subdivision is within the City of Emmett area of impact. The Gem County Comprehensive Plan contains many references to the need to protect ground water resources and the desirability of central sewer in the area of city impact.[3]

boundary has been proposed by the city based on the following criteria: ability to serve area with sewer and other municipal services; trade area; and geographic features. *It is proposed that any new development within the Emmett Area of City Impact be subject to:*
 • Comprehensive Plans of Gem County and Emmett.
 ....
 • *Master Sewer, Water or Drainage Plan adopted by the City of Emmett.* (Emphasis added.)
 ....
**Comprehensive Plan Map**
 The proposed future land uses for the City and County area shown on the comprehensive plan map—generalized future land uses (see back cover).....
 ....
*Urban Residential*
 The residential designation is an area specifically set aside and preserved for residential development. The City and County must provide areas where this development will be directed.
 A minimum lot size should be set in order to accommodate a septic system and well on the same parcel. When central water or sewerage is provided, lot sizes can be reduced to more

The requirement that Sanders Orchard have a proposal for central water and sewer system in connection with the proposed subdivision is consistent with the requirements of the Gem County Comprehensive Plan.

Sanders Orchard contends that the Board could not rely upon the Gem County Comprehensive Plan to require a proposal for central water and sewer because that requirement conflicts with the Gem County Zoning Ordinance. Sanders Orchard relies upon the Official Height and Area Regulations in the Zoning Ordinance which provide that in a B–1 zone the minimum one-half acre lot size "[m]ay be reduced if on central water and sewer." It argues that by implication, the Zoning Ordinance permits individual

wells and septic systems on all lots that are greater than one-half acre in size.

▇▇▇▇ The Board construed this provision as only regulating lot sizes, not as specifying the circumstances under which central water and sewer was or could be required. It permits lot sizes below the one-half acre minimum in B–1 zones if the lots are on central water and sewer but it was not intended to provide that no central water or sewer could be required in B–1 zones if the lot sizes were above one-half acre. This Court defers to the Board's application and interpretation of its Zoning Ordinance, unless such application or interpretation is capricious, arbitrary or discriminatory. *Rural Kootenai Org., Inc. v. Board of Commission-*

dense urban standards. *In areas where soils are not adequate to support septic systems, land use and density may need to be managed.* (Emphasis added.)

. . . .

**Natural Resources and Hazardous Areas**
The natural resources of Emmett include the area's climate, geology, hydrology and soils.....

. . . .

**Existing Conditions**

. . . .

**Water:**.... *Individual subsurface sewage disposal systems expose [sic] a threat in terms of groundwater pollution, unless central sewage facilities are provided.* (Emphasis added.)

. . . .

**Future Conditions**
The City's and County's natural resources will be negatively impacted unless land uses are harmonious with the existing natural environment. The Payette River and its various tributaries are a sensitive natural resource and will require stewardship to minimize encroachment by residential, commercial and industrial development. *It is imperative that the groundwater resource be protected by adequate sanitary sewer service and appropriate spacing of septic tank drainfields so that contamination of the groundwater does not occur.* (Emphasis added.)

. . . .

**Forecast Needs**
All residents of the Gem County must take an increased active role in preserving the quality of life desired by area citizens. .... *Requiring central water and sewer within the city, and limited wells and septic drainfields in the area of city impact, will help protect soil, water resources and groundwater.* (Emphasis added.)

. . . .

**Water Quality Goal Statement**
As an essential and limited natural resource, preserve, protect and promote high quality

standards for groundwater and surface water throughout Gem County.

. . . .

2. Policies for Gem County

. . . .

G2.2 Prevent contamination of groundwater from sewage and wastewater from sewage and wastewater through appropriate treatment and by enforcing regulations.

. . . .

**Public Services, Utilities and Energy Resources**

. . . .

**Engineering and Public Works Goal Statement**
To provide high quality technical analysis, construction, inspection and maintenance of the City's utility infrastructure and utilities in the City and County.
3. **Policies for Emmett**
E3.1. *All new developments should be phased for efficient connection to the municipal water and sewer system within the Impact Area.* (Emphasis added.)

. . . .

**Housing**

. . . .

**Housing and Public Services Goal Statement**
Housing proposals shall be phased with public service and facility plans to provide a tie-in between new residential areas and service needs.
3. **Policies for the City of Emmett**
E3.1 Residential developments shall be phased to allow connection to the municipal sewer system.

. . . .

E3.4 *All development within the City of Emmett Area of Impact shall be connected to the City's Sewer System or install dryline sewers with temporary septic tank sewer systems if approved by Southwest District Health Department.* (Emphasis added.)

*ers*, 133 Idaho 833, 993 P.2d 596 (1999). The Board's interpretation of this provision is neither capricious, arbitrary, nor discriminatory, and is consistent with the wording of the Ordinance.

The portion of the Zoning Ordinance at issue is a chart entitled "Official Height and Area Regulations." For each of the fourteen zones listed, it states the maximum permissible building height; the minimum yard setback requirements for the front, rear, interior, and street side yards; the maximum lot coverage; the minimum lot area per dwelling unit; and the minimum lot width. The minimum lot sizes are 40 acres for dwellings in A and A–1 zones, five acres for dwellings in A 2 through A–5 zones, and one-half acre for dwellings in the eight remaining zones. The chart does not purport to specify whether or not central water or sewer would be required in any particular zone. For each of the eight zones that have a minimum lot area requirement of one-half acre, a footnote states that the minimum lot area requirement "[m]ay be reduced if on central water and sewer." Thus, the "Official Height and Area Regulations" chart does not purport to specify when central water and sewer are or could be required. It does not, by its terms, specifically permit private wells and septic systems on all lots in B–1 zones that were greater than one-half acre in size.

 The Zoning Ordinance provides that the B–1 zone is "confined to those areas which can be served by central water." Although this provision does not mandate central water for all residences in the B–1 zone, it would be meaningless if the Board did not have the discretion to require central water. There would be no reason to limit B–1 zones to areas that can be served by central water if central water could not be required. The Ordinance also provides that the B–1 zone is "confined to those areas . . . which may in the future reach densities of development which can be served by central sewage systems." Again, this provision would be meaningless unless central sewer could be required in B–1 zones for subdivisions in which the planned housing density is great enough that it can be served by central sewer.

**b. Was the decision of the Board supported by substantial evidence?**

The Southwest District Health Department recommended in writing that the proposed subdivision be served with a public water system. It stated that due to concern of possible ground water contamination from improperly constructed wells, its policy is to recommend a public water system for all developments with more than nine lots. The engineering report obtained by Gem County also recommended that any approval of the subdivision application should be based upon a submittal that includes approved plans for a central water supply system, both for protection of the aquifer and for adequate fire protection. Because the B–1 zone is limited to those areas that can be served by central water and Sanders Orchard successfully petitioned to have this property rezoned to the B–1 classification, there did not need to be evidence that the subdivision could be served by central water. The Gem County Soil and Water Conservation District recommended in writing that the subdivision be placed on city sewer or a central sewer system because of its concern that septic tanks in a subdivision of that density would adversely effect ground water quality. The Board did not make any finding regarding the concerns expressed by the Conservation District, or whether the housing density was great enough that the subdivision could be served by central sewer.

 The Board listed seven findings of fact to support its decision.[4] Sanders Or-

---

4. The Board's findings of fact were as follows:

 Based upon the testimony taken at the hearing, and the file contained herein, the Board hereby makes the following findings of fact:
 1. Applicant owns property generally located at 2950 East Twelfth Street, Emmett, Idaho, east of Highway 16 off Sandhollow Road.

 2. Applicant has developed a plan for a subdivision plat on this property consisting of 46 building lots of approximately one acre or larger.
 3. The subdivision plat as developed has no provision for central water or sewer.
 4. The property was previously rezoned to B–1, residential, which allows lot sizes of under one-half acre if on central water and sewer.

chard challenges finding number seven as not being supported by the evidence. That finding stated, "The proposed subdivision is in an area of increasing residential development close to the City of Emmett and it is projected that development of central sewer system and water lines will be extended to that area in the reasonably near future." There was nothing submitted in writing to the Board indicating that central sewer and water lines will be extended to that area in the reasonably near future, or ever. Likewise, no oral testimony was presented on that issue at the hearing before the Board held on December 7, 1998.[5] This finding is not supported by substantial evidence.

### c. Have substantial rights of Sanders Orchard been prejudiced by the Board's action?

 Considering the brevity of the Board's findings of fact, finding of fact number seven was obviously important to its decision. In one of its conclusions of law, the Board mentions "the close proximity of the subdivision to the City of Emmett and the future development of residential subdivisions in that area." That conclusion of law was apparently based upon the factual finding that "it is projected that development of central sewer system and water lines will be extended to that area in the reasonably near future." Therefore, this factual finding was material to the Board's decision. Because no evidence was presented to the Board on this issue, nor were any findings on this issue made by the Planning and Zoning Commission, Sanders Orchard had no notice that the Board may base its decision upon the issue of when the City of Emmett would extend city water and sewer to the subdivision. As a result, substantial rights of Sanders Orchard have been prejudiced by the Board's action in basing its decision on an issue upon which no evidence was presented.[6] Therefore, the decision of the Board must be vacated.

5. The Gem County Planning and Zoning Commission previously denied approval of the Applicant's subdivision plat for the reason that it did not have plans for central water and sewer systems.

6. The subdivision plat also does not have plans for drylines to be installed for future hook-up to central water and sewer systems.

7. The proposed subdivision is in an area of increasing residential development close to the City of Emmett and it is projected that development of central sewer system and water lines will be extended to that area in the reasonably near future.

5. There were three public hearings held in connection with the request for preliminary plat approval. Sanders Orchard was represented at all three hearings. The first hearing was held on November 2, 1998, before the Technical Review Committee. During that hearing, several persons, who are not identified in the record, expressed their opinions as to when the city would extend sewer lines to this subdivision. Those opinions ranged from within one year, to within five years, to not within the foreseeable future. The technical review committee did not make any findings in that regard, and merely concluded that the sewer system would be determined at the public hearing scheduled for November 9, 1998. The second hearing was held on November 9, 1998, before the Gem County Planning and Zoning Commission. A person, who was not identified in the record, stated, "But I do think they need to install dry lines because my feelings are in less than five years, sewer will be there." This person may have been referring to a prior statement by Mr. Gary Lee, an engineer representing Sanders Orchard. During the public hearing held on September 14, 1998, before the Gem County Planning and Zoning Commission in connection with the request to rezone the property, Mr. Lee stated that if city sewer was going to be extended to the property within five years, it might make sense to install drylines (sewer lines that could be later connected to the city sewer system) in addition to septic tanks. At the conclusion of the hearing on November 9, 1998, however, the Planning and Zoning Commission did not make any finding of fact as to when city sewer would be extended to the property. The third hearing was the appeal to the Board held on December 7, 1998. During that hearing, Mr. Lee stated that the property can be served by central water and sewer in the future, but nobody knows when that will be. No other testimony on that issue was presented. When rendering its decision, the Board stated that its findings of fact were based upon the testimony taken at the hearing held on December 7, 1998, and the file. Because the testimony given at the prior hearings had not yet been transcribed, those transcripts would not have been in the file and could not have been reviewed by the Board. There is no indication that the Board listened to any tape recordings of the prior hearings before reaching its decision. Thus, there is nothing to indicate that the Board considered any oral testimony given during the earlier hearings.

6. Because the Board based its decision upon the finding that "it is projected that development of central sewer system and water lines will be extended to that area in the reasonably near

**d. Did the district court err in awarding attorney fees to Sanders Orchard?**

 The district court awarded attorney fees to Sanders Orchard pursuant to Idaho Code § 12–117(1), which provides:

> Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

In this case, the Board's decision hinged upon its finding that "it is projected that development of central sewer system and water lines will be extended to that area in the reasonably near future." The Board has not pointed to any evidence it considered that would support that finding. Therefore, by basing its decision upon this finding, the Board acted without a reasonable basis in fact. The district court's award of attorney fees to Sanders Orchard is affirmed.

**e. Is Sanders Orchard entitled to an award of attorney fees on appeal?**

Sanders Orchard also requests attorney fees on appeal under Idaho Code § 12–117(1). In its decision, the district court reasoned that when the description of the B–1 zone was read in conjunction with the "Official Height and Area Regulations" chart, central water or sewer could not be required on lots in B–1 zones that were greater than one-half acre in size. We do not agree with that portion of the district court's interpretation of the Zoning Ordinance. The Board's interpretation of the "Official Height and Area Regulations" chart, which we uphold, is that the chart does not purport to specify when central water and sewer are or could be required. It does not, by its terms, specifically permit private wells and septic systems on all lots in B–1 zones that were greater than one-half acre in size. Therefore, as we stated above, the Zoning

future," we do not address the issue of whether the Board could have required central water based solely upon the B–1 zoning classification

Ordinance grants the Board the discretion to require central water in B–1 zones and to require central sewer in B–1 zones if the density of the proposed development would be high enough that it can be served with central sewer. Because we do not agree entirely with the district court's interpretation of the Zoning Ordinance, the Board acted with a reasonable basis in law in appealing the district court's decision. We therefore do not award attorney fees on appeal.

## III. CONCLUSION

We vacate the decision of the Board and remand this case for further proceedings consistent with this decision. We affirm the district court's award of attorney fees, but we do not award costs or attorney fees on appeal.

Chief Justice TROUT, and Justices WALTERS, KIDWELL, and Justice Pro Tem SCHILLING CONCUR.

and the overall goals reflected in the Comprehensive Plan. The Board did not make any reference to the Comprehensive Plan in its decision.