# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40436

| | | |
|---|---|---|
| IN THE MATTER OF THE APPROVAL OF VARIANCE ZV2011-2. | ) ) ) | |
| EDWARD L. SHINN and DONILEE E. SHINN, husband and wife, | ) ) | Coeur d'Alene, April 2014 Term |
| Petitioners-Appellants, | ) ) | 2014 Opinion No. 56 |
| v. | ) ) | Filed: June 17, 2014 |
| BOARD OF COUNTY COMMISSIONERS OF CLEARWATER COUNTY, IDAHO, | ) ) ) | Stephen W. Kenyon, Clerk |
| Respondent. | ) ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Clearwater County. Hon. Michael J. Griffin, District Judge.

The decision of the district court is <u>reversed</u> and the case is <u>remanded</u>.

Jones, Brower and Callery, PLLC, Lewiston, for appellants. Karin R. Seubert argued.

E. Clayne Tyler, Clearwater County Prosecuting Attorney, Orofino, argued for respondent.

_____

J. JONES, Justice.

This appeal is from a decision of the district court affirming the approval of a subdivision by the Board of County Commissioners of Clearwater County ("Board"). In approving the subdivision, the Board approved three variances granted by the Clearwater County Planning and Zoning Commission ("Commission") with respect to the road providing access to the subdivision. A portion of the access road crossed over land owned by Edward and Donilee Shinn, who opposed the variances and petitioned the district court for judicial review. The Shinns appealed the district court's decision to this Court.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

1

Edward and Carole Galloway own a 99.82-acre parcel of land in Clearwater County, which they purchased in 1985 ("Galloway parcel"). The Galloway parcel is zoned F-1, which is designated as a low-density residential district. The nearest county road, Middle Road, provides access to the Galloway parcel via an easement over land owned by Edward and Donilee Shinn, and Don Ingle, who is not a party to this action. In 1998, the Galloways secured the easement from the Shinns' predecessor in interest. The easement reads:

> FURTHERMORE, in consideration of One Dollar ($1.00) and other good and valuable consideration, H.L. Ogden, Robert J. Brock and Elaine Brock, husband and wife, and Harold Johnson and Sophia Johnson, husband and wife, grant to Edward J. Galloway and Carole K. Galloway, husband and wife, a perpetual non-exclusive easement thirty (30') feet in width for ingress and egress to the county road and Section 17, Township 37 N., Range 1 E.B.M. . . . ., a perpetual non-exclusive easement fifteen feet (15') in width across the easterly fifteen feet (15') of the E1/2 of the NE1/4 of Section 17 for ingress and egress to the easterly extremity of the easement for ingress and egress granted above. . . . [As well as] a perpetual non-exclusive easement fifteen feet (15') in width for ingress and egress across the westerly fifteen feet (15') of the NW1/4 of Section 16 for ingress and egress to the extremity of the first easement for ingress and egress granted above to Edward J. Galloway and Carole K. Galloway, husband and wife, together with a perpetual thirty foot (30') easement for utilities across the westerly thirty feet (30') of the NW1/4 of Section 16. . . . This Grant of Easements is binding upon and inures to the benefit of the heirs, assigns, and successors of the parties hereto, and the easement for ingress and egress shall not be deemed a public right-of-way.

Notably, there has been no judicial adjudication of the Shinns' or the Galloways' respective rights and obligations under the terms of the easement.

On May 23, 2006, the Galloways filed an application with the Commission, requesting its approval to subdivide their parcel into ten separate parcels, ranging from between six and twelve acres in size. During the review process, it became clear that the proposed subdivision, called the South Fork Estates, would not comply with the access provisions of the Clearwater County Subdivision Ordinance ("CCSO"). Article IV of the CCSO makes it the "responsibility of the subdivision developer to provide an access road from the nearest Federal, State or County road or highway to the subdivision site," and requires that access roads to a proposed subdivision have a sixty-foot right-of-way, have a minimum finished width of twenty-four feet, and be dedicated to public use.

On January 11, 2011, the Galloways filed an application for three variances from Article IV of the CCSO. Those variances would allow for the access road to (1) have a thirty-foot right-

2

of-way; (2) have an eighteen-foot finished width with a fifteen-foot finished width at the property line (referred to as the "bottleneck"); and (3) be a private, as opposed to public, road. A public hearing was held on March 21, 2011. At the hearing, Mr. Galloway provided supporting testimony, while several others—but not the Shinns—provided opposing testimony, and the Idaho Department of Lands proffered neutral testimony. The Commission approved each of the three variance requests in its April 4, 2011 decision ("Commission's First Decision").

On March 25, 2011, the Shinns timely appealed the Commission's First Decision to the Board. They stated the following as grounds for their appeal:

> No facts or testimony were presented which would authorize the issuances (sic) of a variance under the terms and conditions of the Clearwater County Subdivision Ordinance. Further, that the easement which the Galloways propose to use for easement for ingress and egress for parties other than Mr. [a]nd Mrs. Galloway. Finally, that it is not appropriate for a variance to be granted from the requirement that access to the subdivision be dedicated for public use.

The Board held a hearing on May 23, 2011, before ultimately reversing the Commission's approval of the three variances in its decision dated July 29, 2011 ("Board's First Decision"). The Board found the Commission's determination that the Galloways would suffer undue hardship if the variances were not approved—a requirement under CCSO Art. VIII—was not supported by substantial evidence. The Board emphasized that there was no testimony as to the issue of undue hardship, and thus, it had "no choice but to reverse the decision of the Commission with regard to" that issue.

The Board also briefly addressed the Shinns' argument that the easement would preclude anyone besides the Galloways from using the access road for ingress and egress. With regard to that contention, the Board stated:

> The Board, upon review of the record, tentatively finds that the bare language of the easement itself does not prohibit subdivision of the property. The Board does not intend to look behind the bare language, nor to attempt to determine the historical intent of the original parties to the grant and receipt of the easement, but limits its review to the bare language of the document, which appears clear and unambiguous.

> Sufficient evidence was entered at the Commission level to support the finding that the easement is legally adequate to allow subdivision. It is felt that the proper forum for challenging the intent and scope of an easement of this nature is through the Courts rather than the Board.

3

The Galloways' application was then remanded to the Commission for further public hearing and so that the Commission could "review and identify whether or not there is undue hardship as required by the county ordinance." On August 15, 2011, the Commission held another public hearing. In its decision dated September 6, 2011, ("Commission's Second Decision") the Commission concluded that undue hardship had been demonstrated, noting:

> Requiring the applicant to comply with the strict enforcement of the ordinance requirements along with the additional costs involved would be unreasonable and would create an undue hardship on the applicant not justified when an eighteen (18) foot wide road built on the granted thirty (30) foot wide easement along with a fifteen (15) foot gate at the property line has been deemed adequate and safe to provide access to this proposed low density rural subdivision.

The Commission once again approved all three variances, and the Shinns again appealed to the Board on August 31, 2011. The Board heard the appeal on October 24, 2011, affirmed the Commission's approval of the variances on November 7, 2011, and entered a written decision to that effect on November 21, 2011 ("Board's Second Decision"). In its Second Decision, the Board found that (1) "sufficient evidence was presented to justify the Commission's findings[;]" (2) the Commission did not abuse its discretion; and (3) the easement appears to allow for development, provided that the variance is granted to allow the access road to remain private. With regard to this third conclusion, the Board noted that "[t]his is not meant nor is to be construed as a finding based upon a disputed hearing as to the intent of the parties to the easement itself, but is to be construed as a finding solely for agency planning and zoning purposes." On December 19, 2011, the Board entered its final decision approving the South Fork Estates Subdivision, based on its prior approval of the three variances at issue ("Decision Approving the Subdivision").

The Shinns subsequently filed a petition for judicial review with the district court. The district court heard oral arguments on August 28, 2012, before entering its Findings and Conclusions and Judgment on September 11, 2012 ("Order"), in which it upheld the Board's decision on the grounds that the Shinns "have not shown that the variances would prejudice any substantial right of theirs." The Shinns filed a timely notice of appeal to this Court.

## II.
## ISSUES ON APPEAL

1.  Whether the Board erred in approving the subdivision with its three road variances.

4

2.      Whether the district court erred in concluding that the Board's action did not prejudice the Shinns' substantial rights.

## III.
## DISCUSSION

### A. Standard of Review

The standard of review is well-settled:

> The Local Land Use Planning Act (LLUPA) allows an affected person to seek judicial review of an approval or denial of a land use application, as provided for in the Idaho Administrative Procedural Act (IDAPA). For purposes of judicial review of LLUPA decisions, a local agency making a land use decision, such as the Board of Commissioners, is treated as a government agency under IDAPA.
>
> In a subsequent appeal from a district court's decision in which the district court was acting in its appellate capacity under the Administrative Procedure Act ..., the Supreme Court reviews the agency record independently of the district court's decision. As to the weight of the evidence on questions of fact, this Court will not substitute its judgment for that of the zoning agency. . . .
>
> Finally, planning and zoning decisions are entitled to a strong presumption of validity; this includes the board's application and interpretation of their own zoning ordinances.

*Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 508, 148 P.3d 1247, 1254 (2006) (internal citations omitted).

The applicable statutory framework for reviewing agency action is found in I.C. § 67-5279. Pursuant to section 67-5279(3):

> [T]he court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are:
> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) not supported by substantial evidence on the record as a whole; or
> (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3). Section 67-5279(4) lays out an additional requirement: "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4). Thus, "[t]he party attacking a zoning board's action must first illustrate that the board erred in a manner specified [in Section 67-5279(3)] and must then show that a substantial right of the party has been prejudiced." *Cowan*, 143 Idaho at 508, 148 P.3d at 1254. Because this is an appeal from the district court, the Court reviews that decision "as a matter of procedure." *Jasso v. Camas County*, 151 Idaho 790, 793, 264 P.3d 897, 900 (2011).

5

**B. The Board erred when it failed to make the approval of the Galloways' application expressly contingent upon judicial resolution of the access issue.**

During oral argument before this Court, Shinns' counsel made a compelling point, citing to our holding in *Jasso v. Camas County*. After noting the guidance we provided for subdivision access issues of the nature involved both there and here, counsel pointed out that it is not the Shinns who are seeking to expand the usage of the easement across their property. Rather, it is the owners of the easement, the dominant estate holders, who seek to expand the scope of the easement for their benefit in developing their property. As a condition of obtaining approval of its subdivision, the developer is required under Art. IV § D.1 of the CCSO "to provide an access road from the nearest . . . County road . . . to the subdivision site." This is just another condition that a subdivider must fulfill in order to gain approval of its subdivision.

While the Board recognized that it was not the proper entity to determine the scope of the easement and while it noted that a court of law would need to determine the issue of whether the easement would support the usage contemplated by the subdivision, it outright approved the road variances for the subdivision with the recommendation that the Shinns pursue the matter in a declaratory judgment action in a court of law. In effect, this required the Shinns to go to court to prove that the Galloways did not have the right to use the easement to the extent necessary to support their subdivision. This approach seems to put the shoe on the wrong foot, as we strongly hinted in *Jasso*.

*Jasso* arose out of a petition for judicial review of the Camas County Board of Commissioners' decision to approve a preliminary subdivision plat. *Jasso*, 151 Idaho at 792, 264 P.3d at 899. *Jasso* presented similar facts to those found here: (1) a developer submitted an application to develop a subdivision; (2) the access road, Fricke Creek Road, was not a public road, but connected the proposed subdivision site to a public road via an easement over property owned by the Appellants; (3) the applicable subdivision ordinance required that subdivisions have access to a public road; and (4) the Appellants contended that the easement was private, and could not permit subdivision access. *Id*. Eventually, the Camas County Board conditionally approved the preliminary subdivision plat. *Id*. at 793, 264 P.3d at 900. The district court reversed, holding that the Camas County Board's decision was arbitrary and capricious. *Id*. On appeal from the district court, this Court considered whether the Camas County Board of Commissioners' findings of fact and conclusions of law failed to satisfy certain statutory

requirements. *Id.* at 794, 264 P.3d at 901. We affirmed the district court's decision, which had vacated the Board's decision, and remanded the matter to the Board. *Id.*, at 797, 264 P.3d at 904. The Court went on to give the following guidance:

> **B. Interpretation of the Subdivision Ordinance**
>
> Although not necessary to our decision today, we provide the following guidance on remand as to the provisions of the Subdivision Ordinance relevant to the parties' dispute.
>
> **1. If a land use application is submitted and proper access to the land is disputed, the decision-maker should make the application's approval expressly contingent upon judicial resolution of the access issue.**
>
> The parties dispute whether a "road and utility easement for ingress and egress" is sufficient in scope to permit public access to the proposed subdivision. The Board correctly determined that it lacks jurisdiction to determine the easement's nature and scope, as questions of property ownership must be resolved by a district court. *Rural Kootenai Org., Inc. v. Bd. of Comm'rs*, 133 Idaho 833, 842, 993 P.2d 596, 605 (1999). Since article V, § B(1) of the Subdivision Ordinance requires that subdivisions with five or more lots have access to a public street or road, the Board may not approve the subdivision application until such access is certain. Thus, the Board may condition approval of the subdivision application upon a district court's entry of declaratory or final judgment that the easement provides the subdivision with the necessary access to a public road. *See McFadden v. Sein*, 139 Idaho 921, 923, 88 P.3d 740, 742 (2004) (affirming district court's judgment as to easement's scope after county commissioners made approval of conditional use permit expressly contingent upon judicial resolution of scope of the easement).

*Id.* at 797, 264 P.3d at 904.

While the foregoing guidance was not necessary to our decision in *Jasso*, we consider it to be necessary here. Thus, we hold that if a land use application is submitted and proper access to the land is not certain, the decision-maker must make the application's approval expressly contingent upon judicial resolution of the access issue. This holding is consistent with notions of fairness, finality, and judicial efficiency. At the county level, the Shinns were left trying to prove a negative—that the proposed subdivision did not have access as required by CCSO. But it is the Galloways who have the burden to show that each requirement under the CCSO, which includes appropriate access to the proposed subdivision, is satisfied. Therefore, the burden is on the Galloways to establish, through a declaratory action in district court, that the easement allows for subdivision access consistent with the CCSO requirements. The Board acted arbitrarily in

7

approving the subdivision without proof of proper access to Middle Road and we therefore vacate its action and remand for further proceedings consistent with this opinion.

## C. Guidance on remand.

Although we do not rule upon it here, an issue arose during oral argument before the Court that must be considered upon remand. That is, whether the CCSO, or perhaps some other ordinance of Clearwater County, even allows the types of variances sought here.

As noted above, the road requirements are specified in Art. IV of the CCSO. Article VIII contains the CCSO's variance provisions. It states:

### SECTION A. PURPOSE

The Commission may grant, as a result of unique circumstances such as topographical-physical limitations or a planned unit development, *a variance, as herein defined*, from the provisions of this Ordinance on a finding that undue hardship results from the strict compliance with specific provisions of requirements of this Ordinance or that the application of such requirements or provision is impracticable. *(02-25-1985)*

### SECTION B. FINDINGS

No *variance, as herein defined*, shall be favorably acted upon by the Commission unless there is a finding, as a result of a public hearing, that all of the following exist: *(02-25-1985)*

1. That there are such special circumstances or conditions affecting the property that the strict application of the provisions of this Ordinance would clearly be impracticable or unreasonable and cause an undue hardship; in such cases, the developer shall first state his reasons in writing as to the specific provisions or requirements involved.

2. That strict compliance with the requirements of the Ordinance would result in extraordinary topography, or such other conditions would result in inhibiting the achievement of the objectives of the Ordinance. *(08-17-1981)*

3. That the granting of the specified variance would not be detrimental to the public welfare or injurious to other property in the area in which the property is situated.

4. That such variance will not violate the provisions of the IDAHO CODE.

5. That such variance will not have the effect of nullifying the interest and purpose of this Ordinance and the Comprehensive Plan.

### SECTION C. GENERAL

The Commission shall consider the following: *(08-17-1981)*

8

*1.* Administrative appeals where it is alleged that an error has been made by the Administrator; *(08-17-1981)*

*2.* Variances from the terms of this Ordinance; *(08-17-1981)*

*3.* Requests for hearings from affected persons. *(08-17-1981)*

(emphasis supplied). The CCSO's definition of "variance" does not appear to be contained in the record.

During oral argument, Justice Eismann inquired of counsel for both parties as to whether the definition of variance included the type of road variances at issue in this case. Justice Eismann recited the definition in Art. II § B of the CCSO to the Board's counsel: "A modification of the requirements of this Ordinance as to, lot size, lot coverage, width, front yards, rear yards, setbacks, parking spaces, height of a building or other ordinance provisions affecting the size or shape of a structure or the size of the lots."[1] Justice Eismann then inquired as to what authority the Board had for granting variances from the road requirements, when the CCSO's definition of "variance" did not appear to include the type of variations sought here. Counsel for the Board indicated that the authority might exist in the Zoning Ordinance but that does not appear to be the case.[2]

Thus, on remand it will be necessary for the parties to address the authority of the Commission or Board to grant an exception or variance to the road requirements in Art. IV of the CCSO.

**D. Whether the Shinns' substantial rights were prejudiced by the Board's decision must be determined on remand.**

The district court did not consider the issues raised by the Shinns regarding the approval of the variances, focusing rather on whether the Shinns' substantial rights were prejudiced by the Board's decision and holding that they had not been. The Board did not address this issue in its Second Decision, although it touched upon it in its First Decision—"For the purposes of this appeal to the Board, due to the access road at issue being an easement which crosses the Shinn's (sic) property and accesses neighboring property, the Board finds the Shinns to have a substantial

---

[1] The codified version of the CCSO indicates that this definition of "variance" became effective on 08-25-1985, the same effective date as Sections A and B of Article VIII.

[2] The definition of variance in the Clearwater County Zoning Ordinance, Art. II § 202, reads: "A modification of the requirements of the Ordinance as to lot size, lot coverage, width, setbacks, parking space, height of a building or other Ordinance provisions affecting the size or shape or a structure of the size of the lots." Idaho Code section 67-6516 provides a similar definition of "variance."

right which may be prejudiced and thus have standing to appeal." This statement seems to conflate the issue of standing with the issue of prejudice to a substantial right. There does not appear to be any consideration of prejudice to a substantial right in the remaining proceedings by either the Commission or the Board. Arguably, granting approval of a subdivision without having determined the adequacy of the access road could prejudice the substantial rights of the servient estate owner upon which the road is located, but it would appear premature to make any such determination until such time as the scope of the easement has been definitively determined in a declaratory judgment action. Because of our decision to reverse and remand, any consideration of the issue of prejudice to substantial rights is clearly unripe for determination.

## V.
## CONCLUSION

We reverse the district court's decision, vacate the Board's action, and remand the case for further proceedings. Costs on appeal are awarded to the Shinns.

Chief Justice BURDICK, and Justices EISMANN, W. JONES, and HORTON CONCUR.