# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49590

|  |  |  |
|---|---|---|
| ROBERT SCOTT REESE, CINDY R. REESE, RONALD P. REESE, KAREN H. REESE, THOMAS VEA JAMES, DONNA D. JAMES, ALLEN L. BENCH, NATHAN D. ELY, PAULA C. PARKS, SHELLEY PARKS, HUGH M. HORTON, RONALD CRAIG REESE, DIANA PAULINE REESE, LADDIE CURRAN, IARIO COLOMBO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Petitioners-Appellants, | ) ) | Boise, February 2023 Term |
| v. | ) ) ) | Opinion Filed: June 13, 2023 |
| CITY OF BLACKFOOT, a municipality, | ) ) | Melanie Gagnepain, Clerk |
| Respondent-Respondent on Appeal, | ) ) ) | |
| and | ) ) | |
| KENDALL MURDOCK and KATHERYN MURDOCK, husband and wife, | ) ) ) ) | |
| Respondents. | ) ) | |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Stevan H. Thompson, District Judge.

The decision of the district court is affirmed.

Olsen Taggart, PLLC, Idaho Falls, for Appellants. Nathan M. Olsen argued.

Garrett H. Sandow, Blackfoot, for Respondent, City of Blackfoot. Garrett H. Sandow argued.

_____

BRODY, Justice.

This case addresses the standard for demonstrating prejudice to a substantial right under Idaho Code section 67-5279 of the Idaho Administrative Procedure Act. The Reeses and their neighbors (Appellants, collectively referred to as the "Reeses") challenged the Blackfoot City

1

Council's decision to approve a Planned Unit Development ("PUD") in a "Residential Ranchette" zoning district. The district court dismissed their petition for judicial review after holding the Reeses did not demonstrate prejudice to a substantial right. We affirm the decision of the district court.

## I.     FACTUAL AND PROCEDURAL HISTORY

The Murdocks own a 2.78-acre parcel of land in Blackfoot, Idaho. The Murdocks' parcel is zoned "Residential Ranchette." The City of Blackfoot created the Residential Ranchette zoning district through an ordinance adopted in March 2019. Residential Ranchette zoning allows a homeowner who has at least one acre of land to keep a specified number of domestic farm animals on the property. Around the time the Residential Ranchette zoning district was adopted, the Reeses and their neighbors (which include the Murdocks' predecessors in interest) applied for, and were granted, the Residential Ranchette designation, replacing their prior R-1 designation (single family residential zone). The Murdock parcel remains zoned as a Residential Ranchette parcel today.

In January 2020, the Murdocks presented a proposal to the Blackfoot Planning and Zoning Commission (the "PZC") for approval of a PUD to build a subdivision consisting of sixteen homes with small yards for people over the age of fifty-five, referred to as the "Camas Street Subdivision." There is no transcript of the public hearing in the record, but the minutes from that initial meeting show that Appellant Scott Reese voiced concerns over lot sizes, transient home ownership, and irrigation ditches. Appellant Ronald P. Reese also made comments about the irrigation ditches and the danger of drowning they presented. The PZC voted to table the proposal and continued to table the Murdocks' proposal through the spring of 2020.

The PZC again took up the merits of the Murdocks' PUD proposal at a public hearing on June 23, 2020. The minutes from that meeting indicate that twelve neighbors, several of whom are Appellants in this case, made comments opposing the project. However, there is no transcript of the hearing in the record and the minutes of the meeting do not reflect the substance of the comments. The minutes also show that the city attorney read a letter from another neighbor who opposed the project. Again, the letter does not appear in the record and the minutes do not reflect the substance of the letter. There was a motion to recommend approval of the project to the Blackfoot City Council. The motion failed by a vote of 3-4, and the meeting adjourned without further action on the Camas Street Subdivision PUD.

The PZC took up the Camas Street Subdivision PUD again at its meeting on August 25,

2020. The minutes reflect a discussion among the board members and administrative staff concerning whether the project would violate the density requirements of the Residential Ranchette zone. There was a motion to recommend that the Blackfoot City Council approve the PUD, but that motion again failed by a vote of 3-4. When that motion failed, there was a subsequent motion to recommend that the Blackfoot City Council deny the PUD. That motion passed and the PZC adopted written Findings of Fact, Conclusions and Resolution. The prefatory paragraph contained a brief description of the adverse testimony presented at the June 23 PZC meeting:

> At the regularly scheduled meeting of the Planning and Zoning Board of the City of Blackfoot on June 23, 2020, the Board held a public hearing on the request of the [sic] Kendall Murdock for a proposed Planned Unit Development located on Camas Street, Blackfoot, Idaho. This request was for 16 homes to be built on approximately 2.6 acres. See the Application attached hereto as Exhibit "A," and made a part hereof by this reference. At the public hearing testimony in favor was provided by the Applicant. No one else appeared in favor of or neutral to the proposal. ***Approximately 12 people provided in person testimony against the proposal. Most testimony against the proposal focused on traffic, density of homes, parking availability, and other similar concerns.***

(Emphasis added.)

The PZC also concluded in its formal findings and conclusions that the Murdocks' parcel, which is zoned Residential Ranchette, requires a minimum lot size of one acre and that the proposed density of the Camas Street Subdivision did not meet that requirement. The PZC's findings and conclusions also stated: "The Board also has concerns regarding the street widths and parking ability near the homes in light of the proposed density."

A week after the PZC adopted its findings and conclusions, the Blackfoot City Council took up the matter at its September 1, 2020, meeting. There were discussions between city council members, administrative staff, and the city attorney concerning the density requirements of the Residential Ranchette zone.

The Blackfoot City Council also allowed Murdock and Scott Reese to address the Council. While much of Reese's testimony focused on the density requirement for the Residential Ranchette zone, he briefly addressed other aspects of the project. He testified that the street sizes were inadequate for fire trucks. He also testified that the proposed houses might turn into rental houses, which would affect his property's value:

> I'm directly affected, Mr. Horton is directly affected, and there's nothing in the HOA that can stop them from turning that all into landlords. People could come in, buy them, and rent them out. And in 10 or 15 years you're going to have a Camas

3

Street apartment situation. That directly affects my value. I bought that because we love horses. We still raise horses. I will be breeding them there tomorrow.

Reese also testified that he has problems with children in the neighborhood that will be magnified by the PUD:

> And I don't – I have a problem with kids next door. I have one family live to the west of me. We finally took a little vacation, went to Yellowstone, I came back, and my palomino mare had been shot through the hind leg with an arrow. Well, I found arrows a lot out irrigating that pasture. That's one neighbor boy. My 1931 AA Ford, headlights shot out. One neighbor boy. Windshield shot out. One neighbor boy.

When questioned by a council member about how his problems with children are connected to the PUD, his response was that an additional 16 homes in the PUD would magnify the problem: "So we put 16 – 16 homes in 2.6 acres, that's only going to magnify it." Reese also testified that an irrigation ditch feeding pastures in the area would be an attractive nuisance:

> We have a concrete ditch that feeds a lot of those pastures. The water is an attractive nuisance. That's a concern. I'm on that board. We won't allow that to be buried because we have trouble, as it is, getting the water.

The Council approved the PUD despite Reese's concerns and the recommendation of the PZC. The Reeses subsequently filed a petition for judicial review with the district court, contending they were entitled to "declaratory relief invalidating the approval of the PUD under [Idaho Code section] 67-5278." Further, they argued that the PUD was illegal spot zoning.

The district court held that while the City did in fact violate its own code by approving the PUD, the Reeses failed to show prejudice to a substantial right as required under Idaho Code section 67-5279(4). Specifically, the district court held the Reeses failed to address the prejudice issue in their opening brief. The Reeses petitioned for rehearing solely on the prejudice issue. After examining the agency record, the district court held that conclusory allegations of harm were not sufficient to establish prejudice to a substantial right. Appellants timely appealed.

## II.   STANDARD OF REVIEW

"The Local Land Use Planning Act ('LLUPA') allows an affected person to seek judicial review of an approval or denial of a land use application, as provided for in the Idaho Administrative Procedure Act ('IDAPA')." *917 Lusk, LLC v. City of Boise*, 158 Idaho 12, 14, 343 P.3d 41, 43 (2015); I.C. § 67-6521(1)(d). "For the purposes of judicial review of LLUPA decisions, a local agency making a land use decision, such as the Board of Commissioners, is treated as a

4

government agency under IDAPA." *In re Variance ZV2011-2*, 156 Idaho 491, 494, 328 P.3d 471, 474 (2014).

When a district court acts in its appellate capacity under IDAPA, this Court "review[s] the district court's decision as a matter of procedure." *Lusk*, 158 Idaho at 14, 343 P.3d at 43 (quoting *Williams v. Idaho State Bd. of Real Estate Appraisers*, 157 Idaho 496, 502, 337 P.3d 655, 661 (2014)). When doing so, we conduct an independent review of the agency record. *Id.* (citing *Dry Creek Partners, LLC, v. Ada Cnty. Comm'rs, ex rel. State*, 148 Idaho 11, 16, 217 P.3d 1282, 1287 (2009)). "There is a strong presumption that the zoning board's actions were valid and that it has correctly interpreted its own zoning ordinances." *Hawkins v. Bonneville Cnty. Bd. of Comm'rs,* 151 Idaho 228, 231, 254 P.3d 1224, 1227 (2011) (citing *Sanders Orchard v. Gem Cnty. ex rel. Bd. of Cnty. Comm'rs*, 137 Idaho 695, 698, 52 P.3d 840, 843 (2002)). When the district court has affirmed a board's actions, this Court will uphold the district court's decision provided the Board's findings were supported by substantial and competent evidence; however, we freely review the district court's conclusions of law. *Id.*; *see Hungate v. Bonner Cnty.*, 166 Idaho 388, 392, 458 P.3d 966, 970 (2020).

## III.    ANALYSIS

### A. The district court did not err when it held that the Reeses had not shown prejudice to a substantial right.

After considering the Reeses' petition for rehearing, the district court held that, although the Blackfoot City Council violated its own zoning code by approving a PUD that did not comply with the density requirement of the Residential Ranchette zone, the Reeses failed to show that their substantial rights had been prejudiced. After examining the agency record and the parties' arguments on appeal, we agree.

Section 67-5279 of the Idaho Administrative Procedure Act sets forth the scope of judicial review of agency actions. I.C. § 67-5279; *917 Lusk, LLC v. City of Boise*, 158 Idaho 12, 14, 343 P.3d 41, 43 (2015) (applying section 67-5279 to agency action under the Local Land Use Planning Act). The Act limits the grounds upon which agency actions may be reversed. *See, e.g.*, I.C. §§ 67-5279(2)(a)-(d) and 67-5279(3)(a)-(e). In addition, it provides that even if there are grounds upon which to reverse an agency action, the action decision "shall be affirmed unless ***substantial rights*** of the appellant have been prejudiced." I.C. § 67-5279(4) (emphasis added).

5

The Reeses take a novel approach to the prejudice issue on appeal. Based on this Court's recent decision in *Hungate v. Bonner County*, 166 Idaho 388, 458 P.3d 966 (2020), and other authorities cited in that decision, the Reeses contend there are two different standards for determining prejudice to a substantial right depending on the type of land use decision that is at issue. First, there are those situations in which an agency decision "upholds" the status quo and, second, there are situations in which an agency decision "upends" the status quo. The Reeses argue that if an agency decision "upholds" the status quo, the petitioner in a judicial review action has an additional evidentiary burden to show "something more" to demonstrate prejudice. In contrast, if an agency decision "upends" the status quo—like in this case where the Murdocks' Residential Ranchette parcel will be developed into 16 homes—the petitioner in a judicial review action only has to show "rational prospective prejudice wherein prospective concerns, i.e., changes from low density to high density housing, meet the requisite proof of substantial prejudice caused by the entity's violation of the LLUPA." The Reeses' analysis is fundamentally flawed.

To understand the problems with the Reeses' position, we must go back to this Court's decision in *Hawkins v. Bonneville County Board of Commissioners*, 151 Idaho 228, 245 P.3d 1224 (2011), a case cited in *Hungate*. In *Hawkins*, a family owned two neighboring parcels, each with a home on it. The original dwellings, built around the 1930s, did not conform to the county's road frontage ordinance but were grandfathered in because they preceded the ordinance. *Id.* at 230, 245 P.3d at 1226. The landowners, wanting to build new homes on the parcels, filed for two variances because their new homes would not comply with the frontage requirement. *Id.* Although the Bonneville County Planning and Zoning Commission determined the variances were unnecessary because of the prior permissible nonconforming uses, it nevertheless granted the variances. *Id.*

The Bonneville County Board of Commissioners held a de novo hearing on the landowners' requests for variances. *Id.* The Board decided to issue the variances, reasoning that the landowners' properties had been "grandfathered in" so the frontage requirement did not apply. *Id.* Hawkins, a neighbor who objected to the variances, filed a petition for judicial review. *Id.* The district court held that Hawkins did not have standing and that he had not shown that the variances issued by the Board prejudiced his substantial rights. *Id.*

On appeal, Hawkins argued "the Board prejudiced his substantial rights in three general ways: (1) the Board, as a matter of law, misapplied its variance policies by finding that the Meyers had a grandfathered right to continue not complying with the frontage ordinance; (2) new housing

6

on the Meyers' land will generate more traffic across his property, potentially exceeding the scope of any easements there and increasing the risk that his cattle will escape through an open gate; and (3) emergency vehicles may not be able to reach the Meyers' property in case of a fire." *Hawkins*, 151 Idaho at 232, 254 P.3d at 1228.

Before examining Hawkins' claims of prejudice, this Court explained that it had not attempted to articulate any universal rules governing what constitutes prejudice to a substantial right because "each procedural irregularity, legal error, and discretionary decision is different and can affect the petitioner in varying ways." *Id.* (citations omitted). We observed that when it comes to procedural matters, *all* parties involved in a land-use decision (i.e., the applicant and the objectors) have a substantial right to a reasonably fair decision-making process:

> Generally, as a procedural matter, *all* the parties involved in a land-use decision have a substantial right to a reasonably fair decision-making process. *Governing boards owe procedural fairness not just to applicants but also their interested opponents. Both should expect proceedings that are free from procedural defects that might reasonably have affected the final outcome. See Noble v. Kootenai Cnty.,* 148 Idaho 937, 942–43, 231 P.3d 1034, 1039–40 (2010) (holding that, even though the county board disallowed the public from participating in a site visit, doing so did not likely affect the decision); *Eacret v. Bonner Cnty.,* 139 Idaho 780, 787, 86 P.3d 494, 501 (2004) (vacating a county board's decision due to a commissioner's likely bias). This includes the right for all interested parties to have a meaningful opportunity to present evidence to the governing board on salient factual issues. *Cnty. Residents Against Pollution from Septage Sludge v. Bonner Cnty.,* 138 Idaho 585, 588–89, 67 P.3d 64, 67–68 (2003); *Sanders Orchard v. Gem Cnty. ex rel. Bd. of Cnty. Comm'rs,* 137 Idaho 695, 702, 52 P.3d 840, 847 (2002).

*Id.* at 232–33, 254 P.3d at 1228–29 (emphasis added).

Conversely, when it comes to legal errors made by an agency, it is the *applicants* who have a substantial right in having the agency adjudicate their applications by applying correct legal standards:

> Of course, assuming that a decision is procedurally fair, *applicants* for a permit also have a substantial right in having the governing board properly adjudicate their applications by applying correct legal standards. *Lane Ranch P'ship v. City of Sun Valley*, 145 Idaho 87, 91, 175 P.3d 776, 780 (2007); *cf. Sagewillow, Inc. v. Idaho Dep't of Water Res.*, 138 Idaho 831, 842, 70 P.3d 669, 680 (2003) (remanding because the agency misstated the relevant legal standard and denied an application to transfer water rights). Landowner applicants, however, also have a substantial right to develop their own property. *Terrazas v. Blaine Cnty. ex rel. Bd. of Comm'rs*, 147 Idaho 193, 198, 207 P.3d 169, 174 (2009).

*Id.* at 233, 254 P.3d at 1229 (2011).

Critically, when a neighbor or other party *opposes* an agency's decision, the neighbor must show something more than just a legal error has been made:

> On the other hand, when a petitioner opposes a governing board's decision to grant a permit authorizing development, as Hawkins has, the petitioner must still show, not merely allege, real or potential prejudice to his or her substantial rights. I.C. § 67–5279(4). *Since a party opposing a landowner's request for a development permit has no substantial right in seeing someone else's application adjudicated correctly, he or she must therefore show something more. The petitioner opposing a permit must be in jeopardy of suffering substantial harm if the project goes forward, such as a reduction in the opponent's land value or interference with his or her use or ownership of the land. See Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 431, 958 P.2d 583, 588 (1998) (vacating a board decision because it could impact property value or the petitioners' use and enjoyment of their land). It would be instructive to look to law relating to property rights, nuisance, and trespass when determining if a substantial right is at stake in a case such as this.

*Id.* at 233, 254 P.3d at 1229 (emphasis added).

This Court held that the harm alleged by Hawkins—that increased traffic across his property and that emergency vehicles might not be able to reach the neighbor's property in case of a fire—was not a sufficient showing of "something more" to prove prejudice to a substantial right. *Id.* at 234, 254 P.3d at 1230.

Thus, the dichotomy that exists in our case law is not based on whether an agency action "upholds" or "upends" the status quo as the Reeses contend. Rather, the dichotomy is based on whether the party bringing the petition for judicial review is the applicant or the objector. Applicants have a substantial right in having their development rights adjudicated in accordance with applicable law. However, when it comes to an objector, like the Reeses, it is not enough to demonstrate that the agency made a legal error by granting an application. The objector must show, not merely allege, real or potential prejudice to his or her substantial rights if the project moves forward.

This Court applied the requirement to demonstrate real or potential prejudice to a substantial right in *917 Lusk, LLC v. City of Boise*, 158 Idaho 12, 343 P.3d 41 (2015). In *917 Lusk,* this Court considered whether the grant of a conditional use permit ("CUP") for an apartment complex adjacent to a property owned by Lusk violated Lusk's substantial rights. 158 Idaho at 15, 343 P.3d at 44. The proposed project involved a 622-bedroom student apartment building with only 280 parking spaces. *Id*. at 18, 343 P.3d at 47. In its argument, Lusk contended that the new

8

complex "will devalue Petitioner's property, require time and expense for Petitioner to police parking on its own property, [and] inconvenience employees and visitors to Petitioner's building." *Id.* at 19, 343 P.3d at 48. Contrary to the Reeses' position, this Court did not accept conclusory statements of harm from Lusk to show substantial prejudice:

> *The record before the Commission* sets forth substantial evidence supporting Lusk's claim of potential prejudice to its substantial rights. The project calls for 622 bedrooms to house students at Boise State University. The Parking Chapter requires only 280 parking spaces for the project. Without even attempting to evaluate the impact of guests who arrive by automobile, if only half of the River Edge tenants have an automobile, there will be significant numbers of residents looking for parking in the vicinity. We conclude that there is sufficient evidence that Lusk is in jeopardy of economic harm from the project to satisfy the requirements set forth in *Hawkins*.

*917 Lusk*, 158 Idaho at 19, 343 P.3d at 48.

Recently, in *Hungate v. Bonner County*, this Court considered whether the Board of County Commissioners for Bonner County erred when it granted three variances on three different parcels for buildings that had been on the parcels for nearly twenty years. 166 Idaho at 391, 458 P.3d at 969. The Hungates alleged that the variances would diminish their property values and create issues with "increased intensity of use," increased traffic, excessive lot coverage and unsightly architecture, reduced privacy, safety concerns, and reduced enjoyment of wildlife and views. *Id.* at 394-5, 458 P.3d at 972-3. The district court held that the Board erred when it approved the variances because it violated Bonner County Revised Code section 12-234(B), which prohibits the grant of variances when the special conditions required for a variance resulted from the actions of the applicant. *Id.* at 393, 458 P.3d at 971; Bonner County Revised Code section 12-234(B). Despite that finding, it ultimately determined that the Hungates had not shown that their substantial rights were prejudiced. *Id.* at 390, 458 P.3d at 968. This Court affirmed, ultimately holding that the Hungates did not provide evidence supporting their claims that the variances would prejudice their property values or interfere with the use of the property, especially since the structures in question had been in place for twenty years. *Id.* at 396, 458 P.3d at 974.

In this case, most of the evidence presented by the Reeses was either conclusory or cursory—neither of which leads us to a finding that the Reeses have shown prejudice to a substantial right. In the Reeses' opening brief to the district court, they did not address prejudice at all. They did mention it in their reply brief to the district court, but it was in the context of standing rather than an analysis of prejudice to a substantial right under Idaho Code section 67-

5279(4). In their motion for reconsideration, the Reeses pointed to the minutes of a hearing before the PZC and the transcript of the testimony of Scott Reese before the Blackfoot City Council.

However, the agency record before this Court does not contain transcripts of the hearings that took place before the PZC. Instead, the Reeses rely on the minutes from those meetings that describe the testimony and the people who testified. The PZC summarized the testimony: "most testimony against the proposal focused on traffic, density of homes, parking availability, and other similar concerns." The Reeses also rely on the testimony given by Scott Reese before the City Council to show prejudice. Scott Reese voiced concerns that the PUD was inconsistent with the surrounding Residential Ranchette parcels and the population density it would cause in the area, concerns with the street size for firetrucks, the PUD turning into a "Camas street apartment situation" if owners could lease the units, and the danger that would come from an increase in children in the area.

In response to the motion for reconsideration, the district court held that these conclusory statements of harm were not sufficient to establish prejudice to a substantial right. As the district court explained:

> The planning and zoning board noted concerns about parking and street widths, but the City Council found the restrictive covenants for Camas PUD's HOA and parking on only one side of the street to be sufficient remedies to avoid parking or street widths becoming an issue. The "apartment situation" concern is not well founded since the Camas PUD's restrictive covenants require the owner or immediate family member to occupy the property, but it is unclear why an "apartment situation" would impact any substantial rights of the Petitioners in the first place. As to the danger from increased children in the area, Mr. Reese pointed to numerous examples of a child who already lives in the neighborhood causing harm to Mr. Reese's property and provided the idea that more homes in the area meant more children which would amplify the harm that the one child is already causing. The Camas PUD is set to be housing for adults over 55, a demographic that is generally not associated with small children. Even so, the [c]ourt is not willing to accept the argument that increasing the number of children in a residential area is a substantial injury to existing homeowners. There are factors limiting the potential harm of each of the conclusory concerns raised by Petitioners.
>
> The most significant concern raised by Petitioners is that Camas PUD will impact their property values. It is important to note that the entire area at issue here is residential, but a small number of parcels throughout the area elected to become Rl-R, residential ranchette, to preserve the individual parcel's agricultural rights. However, it is not clear how the Camas PUD, an increase in the number of houses, would negatively impact the property values in an already residential area.

(Internal citations omitted).

We agree with the district court's analysis and conclude that the Reeses have failed to show that the PUD will prejudice their substantial rights. The Reeses have also argued that the PUD constitutes illegal spot zoning. We need not address that argument because, regardless of whether the PUD was illegal spot zoning, unless the Reeses' substantial rights have been prejudiced the agency action must be affirmed. *See* I.C. § 67-5279(4); *Evans v. Teton County*, 139 Idaho 71, 74–75, 73 P.3d 84, 87–88 (2003) (stating that the appealing party must show that the Board erred *and* that a substantial right had been prejudiced). Accordingly, we affirm the decision of the district court.

**B.  Neither the Reeses nor the City are entitled to attorney fees on appeal.**

Both parties request attorney fees on appeal under Idaho Code section 12-117. We hold that neither party is entitled to attorney fees.

Section 12-117 authorizes an award of attorney fees to a prevailing party in a case involving the review of an agency decision when the court finds that the nonprevailing party acted without reasonable basis in fact or law. *See* I.C. § 12-117. The Reeses have not prevailed here and thus they are not entitled to an award of attorney fees.

Next, although the City of Blackfoot is the prevailing party, it also is not entitled to attorney fees. This Court has explained that "[t]he standard for evaluating whether a party's conduct was 'without a reasonable basis in fact or law' under section 12-117 is substantially similar to the standard for evaluating whether a party pursued an action 'frivolously, unreasonably, or without foundation' under section 12-121." *S Bar Ranch v. Elmore Cnty.*, 170 Idaho 282, 313, 510 P.3d 635, 666 (2022), *as amended* (June 14, 2022) (quoting *Galvin v. City of Middleton*, 164 Idaho 642, 647, 434 P.3d 817, 822 (2019)). While the City of Blackfoot has prevailed on appeal, the question of law presented by the Reeses was not frivolous, unreasonable, or without foundation. Thus, we decline to award attorney fees to the City. Costs are awarded to the City pursuant to Idaho Appellate Rule 40.

### IV.    CONCLUSION

We affirm the decision of the district court. We decline to award attorney fees to either party. Finally, we award costs to the City.

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and ZAHN CONCUR.

11